E. H. STECKMAN, Appellant, v. E. M. HARBER *et al.*, Respondents.

Kansas City Court of Appeals, November 20, 1893.

1. **Equity:** MAXIM: CONDUCT OF PLAINTIFF. The maxim, "He who seeks equity, must do equity," applied to the facts of this case and the conduct of plaintiff in concealing a trustee's sale from the defendants to get even with one of them on account of another trade, results in the affirmance of a decree requiring the plaintiff to convey certain land to the defendants before he can have judgment against them on certain notes.

2. **Deposition:** NOT SIGNED BY WITNESS: WAIVER. Where the signing of a deposition is waived at the close of the finding, this is sufficient to authorize its use at the trial.

*Appeal from the Grundy Circuit Court.*—HON. G. D. BURGESS, Judge.

AFFIRMED.

*Geo. Hall* for appellant.

(1) There was no finding to support the judgment of the court. While the trial court was not bound to state separately its findings of the facts, it was required to state its findings generally, and having failed so to do the judgment is erroneous. Revised Statutes, 1889, sec. 2135; *Jordan v. Buschmeyer*, 97 Mo. 94. (2) The instrument read in evidence purporting to be the deposition of Fred. G. Grantham was not signed by him, as required by section 4455 of Revised Statutes, 1889, and was inadmissible and incompetent as evidence; and the statement in the notary's certificate that the parties waived the signing of the same does not cure the defect. (3) Defendants were not partners of plaintiff; nor did their relations entitle defendants to notice of the foreclosure of the Grantham deed of trust, nor to a conveyance of the land to them on payment of the notes held as ordered by the court. *Hedges, Batterton & Co. v. Wear*, 28 Mo. App. 575. The defendants had, by their indorsement on the back of the notes, waived notice and demand, and had guaranteed payment, and were not entitled to notice of any proceedings against Grantham or his property. *Mfg. Co. v. Hester*, 71 Mo. 91; *Koenig v. Bramlett*, 20 Mo. App. 636; *Osborn & Co. v. Lawson*, 26 Mo. App. 549. (4) Neither the allegations in defendants' answer nor the evidence entitle the defendants to the relief granted, and the court should have given the first instruction asked by plaintiff. (5) The agreement in regard to the

release of the Lewis deed of trust on the land sold to Grantham, the execution of the notes and deed of trust by Grantham to defendants and the transfer of the same to Lewis is all in writing, and any evidence as to any contemporaneous parol agreement about the notes to Lewis running, and about defendants being notified when Lewis wanted his money is all irrelevant and incompetent. *State ex rel. Yeoman v. Hoshaw*, 98 Mo. 358; *Pearson v. Carson,* 69 Mo. 550; *Tracy v. Iron Works*, 29 Mo. App. 342. (6) As plaintiff was not a party to the agreement between Lewis, Gates, his attorney, Grantham and defendants about letting Grantham's notes and the Lewis notes run at interest and was not interested in the same only so far as his land was holden as security for the same, he was not bound by any such agreement. And if he had been a party to such agreement it was not founded on a sufficient consideration. *McGlothlin v. Hemry*, 59 Mo. 214 *Garnier v. Papin*, 30 Mo. 246; *Bircher v. Payne*, 7 Mo. 462; *Price v. Cannon*, 3 Mo. 453. (7) Lewis had the right to assign the two Grantham notes, sued on, to plaintiff and Howsman, and they were entitled to them by subrogation when they paid the two notes for which they were held as collateral security and for which plaintiff and Howsman's lands were held. *Allen v. Dermott*, 80 Mo. 56; *Orrick v. Durham*, 79 Mo. 174; *Wolf v. Walters*, 56 Mo. 292; *Brown v. Kirk*, 20 Mo. App. 524. Lewis was the owner of the notes sued on and had the right to sell them. *Beecher v. Buckhorn*, 44 Am. Dec. 580; *Chandler v. Stevenson*, 68 Mo. 450; 1 Parsons on Bills and Notes, 157.

*Harber & Knight* for respondent.

(1) The plaintiff's petition is a straight petition at law. The defendants showed equally as complete a

defense at law, and these being the admitted facts, the
plaintiff could not recover at law. *Furnold v. Bank,*
44 Mo. 340; *Hull v. Sherwood,* 59 Mo. 174; *Bushong v.
Taylor,* 82 Mo. 660; *Roberts v. Barlett,* 26 Mo. App.
611–617 (directly in point). (2) The plaintiff then
abandons his law petition, and seeks the aid of equity
(which he must do) by invoking the equitable doctrine
of subrogation, or as it is called, cession, marshaling
of assets, or contribution. If he recovers at all, he
must recover in equity, and by the aid of equity, and
his whole case is in equity, and henceforward he must
address himself to its rules and doctrines; and how
can he recover or hope to have any standing in a court
of equity, when every one of its rules, and every one
of its principals of natural justice, which time has
crystallized into maxim's meet him at the threshold and
scowl at his case. "He who seeks equity, must do
equity." *Creed v. Scraggs,* 1 Heisk. 590: *Whelan v.
Reilly,* 61 Mo. 569, 570; Story's Equity Jurisprudence,
sec. 64, note 2; *Henson v. Keating,* 4 Hare, 1; *Neeson
v. Clarkson, Id.* 97; *Phillips v. Phillips,* 50 Mo. 603;
*Erwin v. Blake & Pet.,* 18; Story's Equity Jurispru-
dence, sec. 64, and cases cited; 1 Pomeroy on Equity
Jurisprudence, 422; *Finch v. Finch,* 10 Ohio St.
501–508; American and English Encyclopedia of Law,
vol. 6, p. 707, title 5, note 2. In one breath he asks to be
subrogated to his securities, and in the next, when
offered all he has paid, refuses Harber and Carnes the
right to be subrogated to their securities. This he
cannot do. For his prayer is addressed to "a court of
conscience, to a court that touches nothing that is
impure." "He who comes into equity must do so with
clean hands," or as otherwise expressed, "He that hath
committed iniquity shall not have equity." American
and Encyclopedia of Law, vol. 6, p. 708, note 2;
*Creath v. Sims,* 5 How. (U. S.), 192; Daniels J.

Francis, Maxims [1 Am. Ed.], 7. To mix up the language of the doctor's letter with that of a great jurist we would have something like the following: "The condign and appropriate answer to such a prayer from such a tribunal, is this, that you have speculated 'quite enough' upon your cosureties, 'already,'" Supreme court of the United States; 1 Pomeroy, Equity Jurisprudence, 435–443, and notes; Bispham's Equity [4 Ed.], 60–62, and notes. (3) The civilians had another maxim which our English "Shylocks" have been meeting face to face for more than seven hundred years, which is this: "Equality is equity;" or, as otherwise expressed, "equity delighteth in equality." American and English Encyclopedia of Law, vol. 6, p. 707, note 1; *Lake v. Gibson*, 1 L. C. Eq. 177; Bispham's Equity [4 Ed.], 60; 1 White & Tudor's L. C. Eq., 105, note. See, also, 1 Story's Equity Jurisprudence, sec. 64*f; Rice v. Morton*, 19 Mo. 281, 282; *Lawrence v. Blow*, 2 Leigh. 30; *Holt's Adm'r v. Creswell*, 72 Gill & Johnson, 37, 52; *Furnold v. Bank*, 44 Mo. 338; *Hickman & Pearson v. McCurdy*, 7 J. J. Marshall, 560, 561, 562; "A surety stands in such a relation to his principal" said ROGERS, J., "that he cannot be permitted to speculate upon him." And the rule is the same in relation to contribution between cosureties." *Wynne Adm'rs v. Brooke*, 5 Rawle, 106, 110; *Hickman v. McCurdy*, 7 J. J. Marshall, 555–560; 1 Hare & Wallace's L. C. Eq., 154, note; *McCormick's Adm'rs v. Abarmon's Ex. Devisees*, 3 Munford, 484, 487; *Daniel v. Ballard*, 2 Dana, 296, 297; *Morrison v. Poyntz*, 7 Dana, 307; *Rainy v. Yarborough*, 2 Ired. on Eq. 249–251; *Allen v. Wood*, 3 Id. 386–388; *Farr v. Ravenscraft*, 12 Gratt. 642; *Edgerly v. Emerson*, 3 Foster, 355; *Bank v. Robertson*, 19 Ala. 98; 1 Hare & Wallace's L. C. Eq., 156; *Mason v. Lord*, 20 Pick. 447, 449; *Fletcher v. Grover*, 11 N. H. 369; 1 Hare & Wallace's, L. C.

Eq., 168; American and English Encyclopedia of Law, vol. 6, p. 712, division 11; Bispham's Eq., sec. 37; Bispham's Eq., sec. 47; *Mfg. Co. v. Worster*, 23 N. H. 462; *Penn v. Lord Baltimore*, 1 Ves. 444; 2 L. C. Eq., 767; *Muller v. Dows*, 4 Otto. 444; *McGregor v. McGregor*, 9 Iowa, 65; American and English Encyclopedia of Law, vol. 6. pp. 712, 713; 1 Pomeroy on Equity Jurisprudence, 468; *Roper v. Roper*, 3 Tenn. Ch. 53; *Parkes v. Parkes*, 3 Tenn. Ch. 687; *Vaughan v. Barclay*, 6 Whart. (Pa.), 392; *DeKlyn v. Watkins*, 3 Sandf. Ch. (N. Y.), 185. (4) "A purchaser, either at a judicial sale or under a deed of trust, who is guilty of any fraud, trick, or device, the object of which is to obtain the property at less than its value, and succeeds in doing so, will not be permitted to enjoy the fruits of his purchase." *Keiser v. Gammon*, 95 Mo. 217. "And the person who has gained an advantage by means of such fraudulent act, will be converted into a trustee for those who have been injured thereby." *McNew v. Booth*, 42 Mo. 189. "Such cases go upon the ground of fraud, and courts will give relief without regard to the circumstances, whether the agreement was a written or a verbal one; or whether it was supported by a consideration or not." *Slowry v. McMurry*, 27 Mo. 119; *Rose v. Bates*, 12 Mo. 30; *Dramschroeder v. Thias*, 51 Mo. 100; *Baier v. Berberich*, 6 Mo. App. 537, 540; *Grumley v. Webb*, 44 Mo. 444; *Peacock's Adm'r v. Nelson*, 50 Mo. 261; *Turner v. Johnson*, 95 Mo. 431; *O'Fallon v. Clopton*, 89 Mo. 284, 290; *Rogers v. Rogers*, 87 Mo. 257, 260; *Digby v. Jones*, 67 Mo. 104, 109; *McNees v. Swansy*, 50 Mo. 588; 37 Cent. L. J. 755.

ELLISON, J.—This action was originally instituted as an action at law against the defendants on which judgment was asked against them on two promissory notes executed to them by one Grantham, and by them

indorsed (and payment guaranteed) to O. H. Lewis. Lewis transferred the notes to plaintiff and Howsman, and Howsman thereafter sold his interest in the notes to plaintiff. The defendant Carnes had purchased a tract of land subject to the incumbrance of two deeds of trust, the payment of which he assumed. Carnes retained one-fifth interest in the land for himself, and sold to defendant Harber one-fifth, to plaintiff one-fifth, and to Howsman two-fifths; each of these parties assuming the proportion of the incumbrances that their portion of the land bore to the whole amount.

Defendant's answer and plaintiff's reply disclosed the following state of facts as stated by one of the plaintiff's declarations given by the trial court: "It is further admitted by the pleadings that the defendant, Carnes, became the purchaser of the land described in defendant's answer, May 7, 1887, at which time it was incumbered by two deeds of trust given to secure two notes, one for $2,250 and interest, the other for $1,200 and interest, both held by O. H. Lewis, which said defendant, Carnes, assumed and agreed to pay as part of the purchase money. That said defendant afterwards sold defendant Harber one undivided fifth of said land, plaintiff one undivided fifth of said land, and Wm. Howsman the undivided two-fifths of said land, all subject to said indebtedness, plaintiff and defendant Harber each assuming and agreeing to pay the undivided one-fifth, and said Howsman the undivided two-fifths of said indebtedness as part of their respective purchase prices for their parts of said lands. That said parties afterwards divided said land, one-fifth of which was set off and deeded to plaintiff subject to said incumbrance, one-fifth of which plaintiff assumed and agreed to pay. Two-fifths of said land was set off and deeded to said Howsman subject to said incumbrance, two-fifths of which he assumed and agreed to

pay, and two-fifths of said land was set off to defendants, subject to said incumbrance, two-fifths of which (or one-fifth each) defendants assumed and agreed to pay. That defendants afterwards sold their part of said land to Fred. G. Grantham, and by agreement of all of said parties and said Lewis, said Lewis released said defendant's portion of said land from said two deeds of trust and in consideration of which said Grantham executed to defendants the two notes sued on secured by deed of trust on said part of said land purchased of defendants, which notes defendants assigned as collateral security to said Lewis to be collected and applied on defendant's portions of said $2,250 note and $1,200 note when they become due, which defendants had assumed and agreed to pay.'' It further appears that plaintiff paid to Lewis the two original notes, and thereby had assigned to him the two notes in suit which were held as collateral.

Plaintiff, by his reply, seeks to be subrogated to the rights of Lewis in the notes in suit, and the question is, has he shown himself entitled to the aid of a court of equity in this respect, under the facts as developed at the trial. The notes in suit were, as shown, secured by a deed of trust on the two-fifths interest in the land set apart to the defendants. E. P. Gates, Esq., an attorney, practicing law at Kansas City, Jackson county, Missouri, who had charge of Lewis' legal business, was trustee in this deed of trust. The trust deed provided that in case of sale thereunder the notice should be published in Jackson county, and the sale should take place at Independence, the county seat. Plaintiff and defendants reside at Trenton, Missouri, a distance of, perhaps, one hundred miles from Kansas City or Independence. They were at this time friends, and saw each other almost daily. The great preponderance of the evidence shows that Lewis held

the notes as an investment for the interest thereon; and that it was agreed between Lewis and all the parties to this transaction including plaintiff, that he, Lewis, would not proceed to collect the money when it became due without first giving them notice. (I do not refer to this understanding as a binding agreement at law, but rather as it may affect plaintiff's *status* in seeking relief at the hands of a court of equity.) Plaintiff directed Mr. Gates, the trustee, to advertise and sell the land; which he did, plaintiff becoming the purchaser. Defendants knew nothing of the sale, or that one had been ordered, and were thereby deprived of the opportunity of protecting themselves. Plaintiff knew that defendants were solvent, and that the money could have been made off of them without resorting to the land, yet he did not demand payment of them or notify them of the intended sale, notwithstanding he was meeting them in Trenton almost daily. He concedes in his testimony that it was his desire to get the land. Plaintiff impressed Mr. Gates, so that gentleman testified, that in directing a sale he was acting for all the parties in interest, including these defendants, and, by reason of such impression, Mr. Gates did not notify defendants of the sale by sending them a copy of the advertisement, as he would otherwise have done. It does not appear that defendants knew that plaintiff had paid off the original incumbrance to Lewis and received from him an assignment of the notes in suit. On the contrary, it was shown that they would have paid the amount represented by these notes (being their portion on the original incumbrance) on demand, and that immediately upon learning of the sale they tendered to plaintiff their portion of the $2,250, for which the note for $900 was collateral, together with all his expenses. Defendants also, when plaintiff had gotten from Lewis the note of $600, which was col-

lateral for their share of the $1,200 note, offered to pay it and the amount due from them on the $900, and all his expenses. These offers were refused.

The trial court entered a decree in substance that if plaintiff would make a deed to defendants of the lands purchased by him at the sale under the deed of trust, within thirty days, that judgment should be entered for him, plaintiff, for $1,540.73, being the amount due him on the notes including interest, taxes and costs of sale. This we consider an equitable adjustment of the entire transaction as it appears in the record, and we shall order its affirmance.

By reference to authorities cited by counsel those principles of equity, which have found expression in a variety of maxims, will be found: "He who seeks equity, must do equity," that is, he will only be allowed to obtain equity upon equitable terms or conditions which will be imposed by the chancellor. Now, in this case the evidence preponderates in favor of the contention that it was understood and agreed, between all the parties to the land purchase, that Lewis preferred that the notes continue at interest after maturity, and when he wanted the money on them he would notify the parties. Plaintiff, being a party to this understanding, of course knew of it when he obtained the notes from Lewis. He knew that the parties lived a long distance from the place of sale and were not likely to see an advertisement of sale in the papers. Notwithstanding this, and the fact that he was on friendly terms and in daily contact with defendants, boarding at the same hotel with one of them, and knew that they were pecuniarily responsible for the amount represented by the notes, he never mentioned the matter to them. We must conclude that his keeping his actions and intentions secret from defendants was for a purpose not equitable or just to them, and such

was the result. Indeed plaintiff does not deny but that his object was "to get even" with defendant Carnes on account of "another trade," with which, of course, we have nothing to do.

2. Objection is made to a deposition taken by plaintiff, but used and admitted for defendants for the reason that it was not signed by the deponent. Signing was waived by the parties at the close of the taking, and this we regard as sufficient to authorize the use of the deposition. It has now become a practice in many places to take depositions with the aid of a stenographer; it sometimes being inconvenient for the witness to wait until the stenographic notes are transcribed, his signature is waived by the parties and so certified by the notary.

We have given attention to the line of argument offered in plaintiff's behalf, and do not take issue with many of the legal propositions asserted, though we think them not applicable in behalf of a party himself seeking equitable relief under the circumstances surrounding these parties as shown by the record. The formal objections taken to the decree in the cause are not deemed sufficient to justify a reversal.

The judgment will be affirmed. All concur.