## HOYBERG v. HENSKE, Appellant.

### In Banc, December 19, 1899.

1. **Depositions:** SIGNATURE WAIVED. At the close of each deposition appeared an entry by the stenographer to the effect that the signature of the witnesses was waived by consent of counsel. The depositions had been on file for two years and had been read at two previous trials of the cause without objection. No motion had ever

been made to suppress them previous to the offer, although a rule of court required the objection to be made by motion to suppress before trial. At the trial new counsel appeared for the defendant, and objected to the reading of the depositions. *Held*, that the court did not err in admitting the depositions in evidence, so far as they were otherwise competent.

2. Opinions of Experts: UNREASONABLE. Juries are in nowise bound to accept the opinions of expert witnesses if they deem them unreasonable, and an instruction in a civil action which so states is not error.

3. Excessive Verdict. It is held in this case that a verdict of $5,500 against a physician for malpractice in setting and treating the broken arm of a four-year-old boy, which rendered the arm permanently useless, was not excessive, under the circumstances of the injury received, and the age and condition of the boy.

PER VALLIANT, J., DISSENTING.

1. Depositions: WAIVER OF SIGNATURE. There was no evidence that counsel ever agreed to waive the signature of the witnesses for this trial, although there had at a previous trial been a waiver "for that trial" and at the next they were read without opposition, and although the notary certified at the end of each deposition that the signature of the witness had been waived. As there was no evidence that counsel had agreed to waive the signatures, the court ought not to hold that these facts constituted a waiver.

2. Opinions of Experts: BELITTLING TESTIMONY. The court has no right to single out the testimony of a certain class of witnesses, such as experts, and belittle it by an instruction to the effect that the jury may disregard it if they deem it unreasonable.

Appeal from St. Louis County Circuit Court.—*Hon. Rudolph Hirzel*, Judge.

AFFIRMED.

*A. R. Taylor* for appellant.

(1) The depositions not being subscribed, and there being nothing in the certificate of the notary indicating either a waiver of signatures or consent to the taking of the depositions in shorthand, they were in fact incompetent and inadmissible

as evidence when objected to.    Steckman v. Harber, 55 Mo. App. 81; R. S. 1889, secs. 4453-4455.    (2)    The rule of the court could not, in derogation of the statute, without the consent of the defendant, make an unsigned deposition admissible in evidence.    "It is beyond the power of any court to make rules or take action which come into collision with either the organic or statutory law."    State ex rel. v. Withrow, 133 Mo. 522; State ex rel. v. Lewis, 71 Mo. 170; State v. Underwood, 75 Mo. 230; State ex rel. v. Gideon, 119 Mo. 94.    (3)    The ground on which the opinion of an expert witness is admissible is, that he possesses knowledge and information superior to that of the jury.    This is peculiarly true where, as in the case at bar, the question was one of science; yet this instruction tells the jury that they may "disregard all or any such opinions (of the surgeons) as appear to the jury to be unreasonable." In other words, no matter that the jury did not understand whether or not the treatment of the child by the defendant was proper, and no matter how learned or skilled the witness testifying might be upon the question of science in issue, the instruction tells the jury they may disregard all such opinions as did not agree with their own opinions.    (4)    The instruction was bad as a singling out of a part of the evidence, instead of leaving the weight of the evidence to be determined by the jury.    Such an instruction has been repeatedly condemned.    Thompson v. Ash, 99 Mo. 160; Hampton v. Massey, 53 Mo. App. 504; Price v. Ins. Co., 48 Mo. App. 295; Rosenbreiter v. Brady, 63 Mo. App. 403; Railroad v. Dawley, 50 Mo. App. 489; Hull v. St. Louis, 138 Mo. 625; Railroad v. Fowler, 142 Mo. 688.    (5)    The true rule is that the jury in considering the testimony of experts as to value either of services or property may exercise their own judgment in connection with the testimony of experts.    Rose v. Spies, 44 Mo. 20; State v. Witten, 100 Mo. 525; Head v. Hargrade, 105 U. S. 45; Cosgrove v. Leonard, 134 Mo. 426.    But in the

case where the matter in issue is one of scientific knowledge, of which a layman is presumed to be ignorant, the jury must make up their verdict from the evidence in the case alone. Kansas City v. Hill, 80 Mo. 534; St. Louis v. Ranken, 95 Mo. 192.

*Lubke & Muench* for respondent.

(1)    The depositions of witnesses, whose testimony had been taken in the city of St. Louis, with the aid of a stenographer, were properly admitted. (a)    Because the signature of the witnesses thereto had been expressly waived, as certified by the notary. Steckman v. Harber, 55 Mo. App. 81. (b) Because they had been read at two previous trials without objection. (c)    Because the rule which requires all exceptions to depositions to be made within a certain time after the filing of a deposition is reasonable and has been upheld by this court. Leslie v. Rich Hill, etc., 110 Mo. 37; Bowman v. Branson, 111 Mo. 343. (d)    Counsel for defendant had been present at the taking of all said depositions, made and preserved objections to testimony, and cross-examined each witness at great length. The depositions had been on file for two years. The technical objection sought to be made on the very day of trial, must be considered waived. Bell v. Jamison, 102 Mo. 71; Delventhal v. Jones, 53 Mo. 462; State ex rel. v. Dunn, 60 Mo. 70; Holman v. Bachus, 73 Mo. 49; Dean St. P. Co. v. Greene, 31 Mo. App. 269; Weeks on Deposition, sec. 445; Randolph v. Woodstock, 35 Vt. 291. (2) Plaintiff's instruction numbered 3 was clearly authorized and proper according to the established law of this State. St. Louis v. Ranken, 95 Mo. 192; Hull v. St. Louis, 138 Mo. 626. "Expert evidence" is merely advisory, and the jury are themselves judges as to its reasonableness. Cosgrove v. Leonard, 134 Mo. 419; Rose v. Spies, 44 Mo. 20; Head v. Hargrave, 105 U. S. 45; Bourke v. Whiting, 34 Pac. Rep. 172; St. Louis

etc., R. R. v. Fowler, 142 Mo. 688; Olson v. Giertsen, 42 Minn 409; Aldrich v. Grand Rap. C. Co. 61 Minn. 531.

ROBINSON, J.—This is an action of a minor suing by his next friend for alleged malpractice of defendant.

The petition charged that the plaintiff, a child of tender years, sustained a fracture of the bone of the left arm above the elbow; that defendant, who held himself out to be a skilled surgeon, was employed to care for and treat plaintiff's broken arm, and because of the unskillful and negligent manner in which the fracture was reduced, and the arm bandaged and plaintiff's injury treated by him, the member became affected with gangrene, which caused the dissolution or wasting away of the muscles, nerves and fibre of the arm, thereby rendering it permanently useless, and damaging plaintiff in the sum of $15,000, for which, with costs, he asks judgment. Suit was originally instituted in the circuit court of the city of St. Louis, in May, 1892, where, after a mistrial, the venue was changed to the circuit court of St. Louis county, in which court the cause was tried three times. At the last trial, had in November, 1896, a special jury was called, rendering a verdict for the plaintiff and assessing his damages at the sum of $5,500, upon which in due time a judgment was rendered. Defendant filed a motion for a new trial and a motion in arrest of judgment, both of which were overruled, whereupon, by proper proceedings, he prosecutes his appeal to this court.

The answer filed in the case before its last hearing, contains a general denial of the allegations of the petition, and affirmatively charges plaintiff with contributory negligence, averring that his parents instead of performing their duty toward the plaintiff were negligent in caring for and nursing him, and failed to give him the necessary attention which his tender years and condition demanded, but instead permitted him to run out of the house while his broken arm was yet in a sling.

The answer further sets out that plaintiff, shortly after the injury occurred, attempted to jump upon a moving street car, and failing so to do, was violently thrown to the ground, severely shocking the broken arm and contributing, at least in part, if not wholly causing, the injury complained of. All of which new matter was denied generally in plaintiff's reply.

The substantial facts shown by the testimony are as follows: That on the 27th day of August, 1891, which was plaintiff's fourth birthday, while playing in a room at the home of his parents, he fell from a lounge and broke the bone of his left arm just above the elbow; that shortly thereafter the defendant was called in to set plaintiff's broken bone, wrapping the arm with absorbent cotton and a muslin bandage, and caused a plaster of Paris cast to be formed around the same, and after so doing left the house, and never again called to see his patient, nor did he inquire after his condition; that within two or three days after the broken arm had been bandaged, plaintiff's fingers became greatly swollen and cold, and were turning blue where they protruded from the lower part of the bandage, and he was taken by his parents to the office of defendant, who examined him and assured the mother that it was customary for swelling to set in in such cases, and that she need not feel alarmed at the condition presented; the next day, Sunday, plaintiff continuing to suffer greatly, he was again taken to defendant's office, who cut off a piece of the plaster of Paris casting and said the boy would have no further trouble; instead of improving, plaintiff seemed to grow worse, and on the following Wednesday his mother again took him to defendant's office, where he removed the splints, bathed the injured arm in warm water, wrapped it up in a loose bandage and said he would put another cast about it in the course of a week. It appears from the evidence that from the time of the injury, which occurred on Thursday, up to the following Wednesday, plaintiff's sufferings were very great and that he cried continuously; that his parents were required to, and did,

alternately sit up with him every night; and that when he was taken to defendant's office on the Wednesday morning spoken of, his fingers continued to be swollen and the bluish color had increased and that the finger tips were covered with blisters; that when the splint was removed the skin of the forearm below where the injury occurred, and where the flesh has subsequently wasted away, hung to the cotton; that a second trip was made to defendant's office on the same day, when he examined the fingers and again assured the mother that the boy's arm would soon be all right, but gave no directions as to the further care of the injury. On the following Friday, the mother again took the boy to defendant's office, when the conditions spoken of still existed in a more pronounced degree, and the defendant advised her to rub the fingers with vaseline salve. On the following Monday she became dissatisfied with the treatment and took the boy to her regular family physician, who thereafter had charge of the case. The arm festered and parts of the flesh came off and didn't heal up until about Christmas time, since when he has had no strength in his arm from the elbow down; that prior to the injury spoken of plaintiff was a healthy child.

Plaintiff's mother testified that while the boy's arm was in its injured condition he was never out of the house unless attended. In such statement she was corroborated by a neighbor. And the mother further testified that so close was her attention that it was impossible for the child ever to have rolled over on his arm or to have injured it in any way. The depositions of a number of physicians in the city of St. Louis, taken on the part of the plaintiff, were read in evidence, eliciting testimony tending to show that the injury for which damages are here sought was caused by the carelessness and negligence of the defendant. These surgeons testified to having examined the plaintiff, and that the dressing of the arm in the manner indicated was very incomplete and unskillful; and that the pressure of the bandages placed on the injured

member by defendant was greater at some points than at others; and that the pressure was sufficient to cut off circulation and cause the appearance of gangrene; that the presence of blisters and discolorations was a sign indicating undue pressure; and that upon the appearance of such conditions proper treatment of the injury would be to immediately remove the bandage; and that if the presence of gangrene was noticed, by proper treatment when it first made its appearance any serious injury could have been avoided; and that the conditions, circumstances and appearance of plaintiff's fingers and hand were sufficient to apprise a competent physician that mischief was liable to be done; that although the bandage when first placed upon an arm under similar conditions might have been loose enough, yet because of the swelling under any cases of fracture it is liable to become too tight, which could be noticed by a proper watchfulness, and with due care and attention any resulting injury could be avoided.

The defendant in his behalf called a number of experts, who made statements tending to show that gangrene in similar cases might occur without cause in the application of the bandage; and that it frequently was brought about, especially where the limb had been injured by a blow over or near the injured part, causing a clot of blod to form in the artery, thus shutting off circulation, and known to the medical fraternity by the name of thrombosis; and one witness testified that gangrene might be caused by bacteria in the blood or sugar in the urine; although a portion of these same witnesses testified that gangrene could be caused by outside pressure, and all except one admitted that in hypothetical cases put to them, based upon the facts of this controversy, where the fingers had become cold and discolored and the patient in great pain, it was the duty of the attending physician to remove the splint at once, and take further steps to arrest the progress of the gangrene.

At the close of the testimony the court gave instructions

for plaintiff which told the jury in effect that if they found from the evidence that defendant undertook and assumed to professionally treat the plaintiff for his injury he was bound to use the degree of skill and learning of those ordinarily engaged in the practice of surgery, and that he was bound to use ordinary care and diligence in the exercise of such skill; and that if the jury found that he failed to do so, or failed to continue the exercise of such skill and care, and because of the lack thereof the present condition of plaintiff's arm was brought about, they should find for the plaintiff.

Plaintiff's third instruction told the jury that in determining whether or not such skill and care had been used they were not bound by the testimony of the experts, but they might disregard all or any part of their opinions which appeared to the jury to be unreasonable.

Defendant asked and the court gave in his behalf, a series of instructions which properly set forth the theory contended for and correctly stated the rule as to contributory negligence relative to the facts of this case.

The depositions of the physicians read in behalf of the plaintiff were taken by a stenographer in shorthand, but were not signed, but at the close of each appeared an entry to the effect that the signature of witnesses was waived by consent of counsel; these depositions were taken about two years prior to the last trial, and had been read at two previous trials without objection. No motion had ever been made to suppress the depositions on account of irregularity and objection was first raised to them on account of the failure of signature during the last trial at the time of the offer by plaintiff to read the same, when defendant, through new counsel who appeared for the first time in the case, made his objections, which were overruled by the court. It further appears that there was a rule in force in the trial court requiring the objections such as here made to be by motion, before the trial.

Defendant now contends, first, that it was vital error on

the part of the trial court to permit the depositions to be read over his objection, and urges that point for reversal here, but we do not find any merit in his argument. The same question has been before the courts of last resort in this State a number of times, and a different position has been taken from the one now asserted by counsel for defendant.

In the case of Steckman v. Harber, 55 Mo. App. 71, the court held that a waiver of signature by the parties at the close of the taking of a deposition is sufficient to authorize the use of one not signed. In this age when time often becomes an item of great value, men of the busy business world do not have time to have their statements taken down by one writing in long hand with pen and ink, and it has become a practice to call in the aid of a stenographer, who records the questions and answers by the use of stenographic notes, and afterwards transcribes them on the typewriter, and when this is done it is sometimes inconvenient and oftimes would cause vexatious delay and annoyance if the witness were required to wait until the transcript had been prepared or afterwards be sought out by the notary for the purpose of having his signature affixed to the deposition and it is now no unfrequent thing to find depositions so prepared among the records of our courts in most important cases. It has been held by this court that objection to a deposition on the ground that the notice given was defective comes too late after the parties have gone to trial; that the proper proceeding is to file a motion to suppress before the jury is called. [Bell v. Jamison, 102 Mo. 71; State ex rel. v. Dunn, 60 Mo. 64.] Also, that one can not remain passive until his adversary has announced himself ready for trial, and for the first time, when he offers to read his deposition, object to it on the ground of some alleged informality in the taking or authentication thereof (Holman v. Bachus, 73 Mo. 49); so it has been ruled that an insufficient authentication is waived unless a timely motion to suppress depositions on account thereof is made by the objecting

party.   [Deane Steam Pump Co. v. Green, 31 Mo. App. 269.]

Under the circumstances of this case the defendant can not be heard to object to the action of the court in allowing the depositions to be read; nor have his rights in anywise been denied or abridged.   The depositions had been on file for more than two years prior to the trial, and, moreover, had been read in evidence without objection at two previous trials, and common fairness should not permit depositions, through newly employed attorneys, in the midst of the trial, when it is apparent that a substitute of the testimony contained therein could not be found on the spur of the moment, or the signature to same be obtained, to raise an objection, as to form, waived at two former trials, and especially when the waiver of that formal objection (unsigned though it also be) appears as an entry upon and at the close of two of the depositions in terms unrestricted and unqualified.   We see no reason why the absence of the signatures of the deposing witnesses who appeared before the notary public and gave their testimony (as the notary certifies they did) should not be considered as waived, as any or all others of the directory requirements of the statute.   Then timely objections on account thereof have not been made.   As said, the notary public certified that the witnesses appeared at the time and place designated in the notice, and gave their depositions.   If objection to the form thereof is not made according to rule eight of the trial court then in force, requiring that "all exceptions to depositions except for incompetency or irrelevancy, shall be considered waived unless filed within two term days after notice of the filing of such depositions has been served on the opposite party or his attorney.   And if no notice has been given, such exceptions must be filed at least two days before the case is set for trial," etc., which rule has been before this court and approved as a reasonable and proper requirement.   The only remaining objection that could be made to the reading of the depositions, would be such as could

be made to the testimony of the witness if produced before the court in person; that is, to its competency or relevancy. The all essential question is, did the witness so testify as disclosed by the deposition, and is that testimony relevant and competent? The signatures of the witnesses, the notice of the taking of the deposition, and the authentication by the notary, all go to the form of the deposition as directed by the statute, and may be considered as waived unless a timely motion to suppress on account thereof is made.

Counsel for defendant charges that the trial court erred in giving instruction number 3 on behalf of the plaintiff, and he relies for reversal, in the main, upon his objection to this instruction. The instruction of which he complains, in effect, told the jury that in determining the question as to whether or not the defendant exercised such skill and care of plaintiff's broken arm as under the law he should have exercised, they were not bound by the opinions of expert witnesses, but had the right to disregard all or any part of such opinions as appeared to the jury to be unreasonable. We fail to recognize the vice in this instruction counsel seeks to point out. It is the established law as declared by this court that where experts are called to testify, their statements are not to be considered as evidence of facts, but are of an advisory nature, and they are permitted to express opinions because of the peculiar knowledge they possess, but juries are in no wise bound to blindly accept their ideas, but after receiving the advice of experts are permitted to use their own judgment in passing upon the things concerning which the opinions are given, and they are necessarily permitted to disregard the testimony of such experts as may appear to them unreasonable. [Cosgrove v. Leonard, 134 Mo. 419; St. Louis O. H. & C. R'y v. Fowler, 142 Mo. 670; City of Kansas v. Hill, 80 Mo. 523; City of Kansas v. Butterfield, 89 Mo. 646.] Almost the same instruction as the one here complained of was approved in the case of St. Louis v. Ranken, 95 Mo. 189. Were it not so,

because of the widely diversified notions and wholly different results arrived at by separate individuals even when forming conclusions upon the same facts and circumstances, juries would be wholly at sea, and to refuse to permit them to be their own judges of what is reasonable and what is unreasonable would operate as a failure of the purposes for which they are called in this class of cases.

Counsel for defendant finds particular fault with the instruction under discussion because it fails to tell the jury that in order to disregard the opinions of the experts presented to them they must do so solely on some other facts and circumstances in the case drawn out by the testimony. We do not appreciate the force of this distinction. The right of a jury to reject the mere opinion of an expert or experts certainly is not more restricted than the right to reject the testimony of a non-expert upon a question of fact; and yet the court has held that the jury, being the sole judges of the evidence and the weight thereof, are not bound blindly to accept as true all or any part of a statement of a witness because it is uncontradicted by some other witness or witnesses, or the circumstance in the case, but may totally reject all or any part thereof when utterly unreasonable or shocking to credulity. Why say to a jury that they must give credulous consideration to a palpably absurd and unreasonable opinion or opinions that came from the mouth of a so-called expert or experts upon a question scientific or otherwise, when unreasonable, absurd or abnormal statements as to the questions of facts can be rejected on account of their own inherent weakness? The assertion of the proposition is as unreasonable as it is illogical, and it is as illogical as it is unreasonable. Juries are required in cases like the one at bar, to apply their own experience, knowledge and judgment, and the issue is to be determined not merely by the opinion of experts, but further by the exercise of their own judgment of the facts upon which the opinion was given. See, Head v. Hargrave, 105 U. S. 45. This

opinion was followed in the case of Jones v. Fitzpatrick, 24 S. E. Rep. 1030; Cosgrove v. Leonard, *supra.*

The depositions read by plaintiff being properly heard, it follows that counsel's objection that there was not substantial evidence upon which to find a verdict that the defendant was guilty of malpractice, is necessarily without merit; with it, there is abundant evidence to justify the jury in such a conclusion, and there being testimony upon which to base such a finding their action will not be disturbed. Neither do we think the verdict of $5,500 to be excessive under the circumstances of the injury sustained, and the age and condition of the plaintiff.

The judgment of the circuit court will, therefore, be affirmed. *Gantt, C. J., Burgess, Brace* and *Marshall, JJ.,* concur; *Valliant, J.,* dissents; *Sherwood, J.,* absent.

VALLIANT, J. *(dissenting.)*—Permitting the plaintiff to read the depositions which were not signed by the witnesses nor certified as the statute, section 4455, requires, was in my opinion error.

The statute requires that the deposition shall be reduced to writing by the officer taking it in the presence of the witness and signed by him. A paper purporting to be a deposition unsigned by the witness and not certified by the officer to have been reduced to writing in the presence of the witness is incompetent as evidence. The rule of court shown in the record does not purport to cover objections on the ground of incompetency. The court could not by a rule overcome a requirement of the statute, and this rule does not attempt to do so. It relates only to mere irregularities.

Counsel for plaintiff in their statement on page 8 say: "Upon the offering of the deposition of Dr. Ludwig P. Pollman, defendant raised the objection that the same was not signed by the witness. The deposition was taken November 10, 1894, filed in the cause Nov. 14, 1894, read at one trial

by both parties waiving objection for that trial, read again at a subsequent trial without objection, and no motion to suppress the same or notice of objection was ever given by defendant."

Objection to a deposition for incompetency is not made by a motion to suppress, nor is any notice required. A motion to suppress relates to some irregularity in the taking or certifying the deposition or to some matter *dehors* the document.

The fact that the counsel when they waived the objection to the deposition in the first place expressly limited the waiver to that trial, indicates that they did not intend the waiver to apply after that; therefore, plaintiff had no right to read the deposition at this trial by virtue of that waiver. The only evidence that the deposition was "read again at a subsequent trial without objection" seems to be a recital in the record to the effect that when this objection was made the counsel of plaintiff in opposition called the attention of the court to the fact "that it had been so read." At this trial the defendant was represented by different counsel from those who had formerly represented him, and it does not appear that they knew anything about it. The court made no response to the remark. The counsel in that connection offered in evidence the rule of court and then the court overruled defendant's objection. Whether the court's ruling was based on the rule or on what the plaintiff's counsel " called its attention to" does not appear.

The signature of a witness and the reducing of his testimony to writing in his presence by the notary are matters the attorneys in the case may waive, and when an agreement to do so has been made the court will hold the parties to it, nor will a mere change of counsel vacate a valid agreement of that kind. But the trouble with these depositions is there was no evidence that there ever was such an agreement. The law does not make it the duty of the officer taking the deposition to certify to agreement of counsel, and his certificate is no evidence of such.

But a more serious error in my judgment was in the giving of the instruction to the effect that the jury were at liberty to disregard the opinions of the expert witnesses if the jury did not think they were reasonable. Instructions of that kind have been approved by this court, but I am not aware that we have ever approved such an instruction except in relation to an opinion on a commonplace subject about which men of ordinary business experience may be presumed to have intelligent opinions of their own, for instance, as to the value of property, the value of services, etc. Even in such matters in my opinion, such an instruction is wrong. What the law declares to be legal evidence, the court has no right to belittle. It is not the province of the court to add to or detract from the weight to be given to any evidence that the law permits to go to the jury. To single out this class of evidence from the rest and instruct the jury that they are at liberty to disregard it, puts it at once at a discount. The jury has no right to disregard any evidence until it has weighed it, or until it has been impeached. And it is to be weighed in the scales of their own minds and not that of the judge. The extent to which, in my judgment, the court should go is to give the familiar instruction to the effect that if a witness has willfully sworn falsely to a material fact he may be discarded as unworthy of belief entirely. Even in that case no witness or class of witnesses should be marked out, and the jury itself must first decide that the witness has committed willful perjury before his evidence can be disregarded.

But I am not aware that this court has ever before sanctioned an instruction of the kind now under discussion in the case of learned witnesses on a highly scientific subject. It is one thing to tell a jury that they may set their own opinions up against those of so-called experts in matters of every-day trade and traffic, and altogether a different thing to tell them they may disregard the opinions of men learned in a deep science. It is true that when learned witnesses differ and

each attempts to explain his theory to the jury unlearned in that science, the jury often become confused or bewildered, but so does a jury when there is an inextricable confusion and contrariety of facts.

There is a natural prejudice of ignorance against learning, and on that account a jury often needs but the faintest hint from the judge to lead them to treat with ridicule the evidence of learned witnesses.

The question in this case was whether or not the defendant had used proper skill as a surgeon in the treatment of the plaintiff.    And the court properly told the jury in another instruction, that the law required of the defendant only that "he would exercise such skill and care as men of his profession ordinarily exercised in the treatment of such cases."    The defendant to prove that he had done his duty in this respect produced on the stand a number of the most learned and reputable physicians in the city of St. Louis, who testified as to the usual treatment practiced among surgeons of standing in their profession in such cases.    Those witnesses explained to the jury what gangrene was, not alone as the uneducated eye would see it, but as it is known to the pathologist, its causes, its symptoms, its progress, its treatment, all as bearing on the question of whether or not the defendant had treated the plaintiff in accordance with the usual practice of skilled surgeons.

It was in reference to testimony of that character that the jury were instructed that they might disregard the whole of it if they thought it unreasonable.    I do not believe that that is the law.

For these reasons I can not concur in affirming the judgment of the circuit court.