232 S.W.2d 821 (1950)
WILL DOCTER MEAT CO.
v.
HOTEL KINGSWAY, Inc. et al.
No. 27820.
St. Louis Court of Appeals. Missouri.
September 19, 1950.
*822 Victor Packman and Irl B. Baris, of St. Louis, for appellants.
Forgey & Sindel, of St. Louis, for respondent.
BENNICK, Commissioner.
This is an action by Will Docter Meat Company upon an account of $2,198.94 for meat sold and delivered between December 3, 1946, and February 6, 1947, for use in the restaurant operated in Hotel Kingsway in the City of St. Louis.
The whole issue in the case was one of determining the identity of the parties liable on the account.
Plaintiff recovered judgment for the full amount of its account against certain of the named defendants, whose appeal to this court has followed in the usual course.
The hotel itself, that is, the land and the improvement erected upon it, was owned by a corporation known as Kingsway Holding Company. As its name implies, the sole function of such corporation was to hold title to the physical property. A separate corporation known as Hotel Kingsway, Inc., originally operated the hotel as a business establishment, and in that connection operated the restaurant which was maintained on the premises as a part of the hotel's facilities. This procedure remained in effect until October 31, 1943, when Hotel Kingsway, Inc., ceased the operation of the hotel, but continued the operation of the restaurant.
At that time the operation of the hotel, exclusive of the restaurant, was taken over by a partnership composed of Morris Steinbaum, Freida Steinbaum, Harry Steinbaum, Albert Steinbaum, and Jerome Steinbaum, who carried on their business under the name of Hotel Kingsway Operating Company. The Steinbaum family group comprised the financial interests that had acquired the hotel at some time prior to the inception of the present controversy. Morris Steinbaum was the president of Hotel Kingsway, Inc., and was nominally the manager of the hotel. However the actual management was in the hands of his son, Harry Steinbaum, who held the title of assistant manager. A younger son, Jerome, served as assistant to Harry.
One William Johnson had been employed as chef at the hotel since November, 1944. Presumably his actual employer was Hotel Kingsway, Inc., the corporation engaged in the actual operation of the restaurant. In his capacity as chef he ordered supplies for the restaurant, some of which were obtained from Will Docter Meat Company.
On April 1, 1945, Johnson himself took over the operation of the restaurant under a verbal lease negotiated with Morris Steinbaum. So far as the record reveals, there was no attention given to the precise capacity in which Morris Steinbaum was acting in negotiating the lease, whether as president of Hotel Kingsway, Inc., or as manager of the hotel and member of the partnership doing business as Hotel Kingsway Operating Company. It may have been that as head of the family group which had acquired control of the hotel, he was not concerned at the moment with the necessity for observing formalities growing out of the manner in which such control was being exercised.
When Johnson took over the operation of the restaurant, he gave no notice of his new status to the firms from which he bought supplies, nor was any notice given by the individuals and corporations interested in the management of the hotel. On the contrary, he was permitted to deal with the different salespeople on the same apparent basis as when he had been buying for the Steinbaum interests, and his orders were taken in the name of Hotel Kingsway, which was the name he used in the operation of his restaurant. As a matter of fact, he had had a conversation with Morris Steinbaum and certain of his associates in March, 1945, just prior to taking over the operation of the restaurant, in the course of which Morris Steinbaum had advised him that unless he carried on. *823 his business in the name of the hotel, he might not be able to get supplies. In other words, the idea was that the firms with which he dealt might not be willing to furnish supplies on the strength of his own credit, but would continue to serve him if they were left to assume that they were doing so on the strength of the hotel's credit. His license was issued to William Johnson doing business as Hotel Kingsway. The supplies were delivered to the hotel, and bills were sent to and accepted by the hotel, and then taken down and turned over to Johnson by one of the hotel's employees. It is true that the checks in payment were drawn against his own personal account, but they were then transmitted to the respective creditors in hotel envelopes, or at least plaintiff's evidence so disclosed.
It appears that the hotel management became dissatisfied with the manner in which Johnson operated the restaurant, and in February, 1947, he was relieved of control, and the restaurant was taken over by the partnership whose members carried on their business under the name of Hotel Kingsway Operating Company. It will be recalled that the operation of the hotel, exclusive of the restaurant, had been in the hands of the partnership since October 31, 1943. It was not until Johnson was relieved of control that Will Docter Meat Company received its first intimation that the Steinbaum interests had not been operating the restaurant during the time it had furnished the supplies in question; and when the Steinbaum interests refused to honor the account, Will Docter Meat Company caused the present action to be instituted.
Faced with a dilemma as to who was liable on the account, plaintiff brought its action against Hotel Kingsway, Inc.; Kingsway Holding Company; William Johnson and Morris Steinbaum individually; and Morris Steinbaum, Freida Steinbaum, Harry Steinbaum, Albert Steinbaum, and Jerome Steinbaum, copartners, doing business as Hotel Kingsway Operating Company.
In its petition plaintiff charged that defendant William Johnson had operated the restaurant as the agent of the other named defendants, and that it had sold the merchandise in question at the special instance and request of such named defendants acting through their agent, defendant William Johnson.
In their answer defendants denied that Johnson had been the agent for the other defendants, or that the merchandise had been sold and delivered by plaintiff at the special instance and request of such defendants.
There was a further defense under the statute of frauds, Sec. 3355, R.S.Mo.1939, Mo.R.S.A. § 3355, based upon the alleged lack of a note or memorandum in writing signed by the defendants or their agent lawfully authorized.
During the trial of the case the court directed a dismissal as to defendant Kingsway Holding Company, whose only function was to hold title to the real estate. The jury found in favor of defendants William Johnson and Morris Steinbaum, but found in favor of plaintiff, and against defendants Hotel Kingsway, Inc., and Morris Steinbaum, Freida Steinbaum, Harry Steinbaum, Albert Steinbaum, and Jerome Steinbaum, copartners, doing business as Hotel Kingsway Operating Company.
Following an unavailing motion for a new trial, the defendants against whom the verdict had gone gave notice of appeal, and by subsequent steps have caused the case to be transferred to this court for our review.
The first point relied on is that plaintiff failed to make a submissible case against either Hotel Kingsway, Inc., or Hotel Kingsway Operating Company.
The case was pleaded upon the theory of Johnson's actual agency for appellants, but was submitted upon the theory of agency by estoppel. Appellants complain of the submission upon such theory, which had not been specifically raised by the pleadings as it should have been if plaintiff expected to rely upon it, and which had not appeared from appellants' own evidence. The answer is that the question of agency by estoppel was none the less tried without objection and by the implied consent *824 of the parties, in view of which it was to be treated in all respects as if it had been distinctly raised in the pleadings. Laws Mo.1943, p. 378, sec. 82, Mo.R.S.A.§ 847.82.
Agency by estoppel is of course not actual agency, but instead is confined to those cases where the authority is not real but merely apparent. In other words, where a person, by his acts or conduct, has knowingly caused or permitted another to appear as his agent to the injury of a third person who has dealt with the apparent agent in good faith and in the exercise of reasonable prudence, he will afterwards be estopped to deny the agency when the third person seeks to hold him to account. Assuming the presence of all the essential elements of estoppel, it will make no difference that as between the principal and his apparent agent, the relationship of agency did not in fact exist. Hackett v. Van Frank, 105 Mo.App. 384, 394, 79 S.W. 1013; Sidney Weber, Inc., v. Interstate Motor Freight System, Mo.App., 205 S.W.2d 291, 297; City of Springfield v. Koch, 228 Mo.App. 511, 517, 72 S.W.2d 191, 194; 2 C.J.S., Agency, § 29 (b); 2 Am.Jur., Agency, sec. 104.
In this case there was evidence to show that appellants not only knowingly permitted, but in fact encouraged, Johnson to carry on the operation of the restaurant in the name of the hotel just as though there had been no change in his status or in his relationship to the management of the hotel. By so doing for the avowed purpose of enabling Johnson to secure merchandise on the strength of the hotel's credit, and by accepting bills sent to the hotel, appellants held Johnson out to the trade as their representative, or at least the jury were entitled so to find. Plaintiff sold its meat with the idea that it was the hotel that was its customer, and without any knowledge to the contrary until after Johnson had become delinquent in the payment of the account. Appellants were the parties who, together, were in charge of the operations of the hotel. There was a submissible case against them upon the theory of agency by estoppel, and their separate motions for directed verdicts were properly overruled.
But notwithstanding the fact that there was a case for the jury, we cannot escape the conclusion that there was error committed which materially affected the merits of the action and requires the trial of the case anew. We refer to the exclusion of the deposition of Morris Steinbaum, which, as appellants say, contained testimony calculated to support their defense and to refute certain evidence offered for plaintiff.
The deposition had been taken by plaintiff itself on March 17, 1948, at a time when Morris Steinbaum, then a resident of Kansas City, Missouri, happened to be in St. Louis on business and was produced by defendants' counsel at the office of plaintiff's attorneys. The deposition was later transcribed, with the notary's certificate appended, on July 20, 1948, and was then filed in court two days later, or on July 22, 1948. It remained on file without any action to challenge its sufficiency until the trial of the case, when it was offered in evidence by defendants' counsel, both on behalf of all the other defendants except William Johnson, and also on behalf of Morris Steinbaum himself, who was then in California, as the evidence had previously disclosed.
The deposition was first objected to by plaintiff upon the principal ground that there had been no showing that Steinbaum's absence from the trial was without the consent, connivance, or collusion of the defendants offering his deposition. The objection was sustained, and then when counsel followed by offering the deposition on behalf of the deponent himself, it was excluded upon the ground that it had not been signed by the deponent. Counsel conceded the inaccuracy of the notary's certificate that the deposition had been signed by the deponent, but complains, among other things, that he was not given the opportunity to have the notary amend his certificate so as to account for the lack of a signature.
Since Steinbaum did not reside in the City of St. Louis where the trial was being held, it was immaterial upon the *825 question of the admissibility of his deposition whether he had gone to a greater distance than forty miles from the place of trial without the consent, connivance, or collusion of the parties requiring his testimony. Sec. 1944, R.S.Mo.1939, Mo.R.S.A. § 1944; Carpenter v. Lippitt, 77 Mo. 242. Absent any other valid ground of objection, it was enough, under Section 1944, to warrant the reading of the deposition that Steinbaum was shown to have gone out of the state.
The question therefore resolves itself into one of whether the deposition was properly excluded upon the ground that it had not been signed by the deponent.
The deponent's signature to his deposition is not in all events indispensable. Smith v. Henwood, 349 Mo. 396, 161 S.W.2d 232; Hoyberg v. Henske, 153 Mo. 63, 55 S.W. 83. That this is so is expressly recognized by the new code, which makes special provision for circumstances where the signature is not obtained. Laws Mo.1943, p. 396, sec. 144, Mo.R.S.A. § 847.144. After all, the presence of the deponent's signature goes primarily to the form of the deposition, as the Supreme Court pointed out in Hoyberg v. Henske, supra.
In this case there is no question but that the deposition was in truth the deposition of Morris Steinbaum, as it purported on its face to be. The deposition had been taken by plaintiff itself, and had presumably been filed in the cause by plaintiff itself. Had plaintiff undertaken to use the deposition or any portion of it as an admission against Morris Stekinbaum's interest, the latter might have been in a position to object upon the ground of the lack of his signature, which, if it had been affixed, would have formally completed the deposition and have evidenced his acknowledgment that he had made whatever statements it contained. Westinghouse Electric Supply Co. v. Binger, Mo.App., 230 S.W.2d 166. But here the deposition was offered, not by plaintiff, but on behalf of Morris Steinbaum himself, by which act he was put in the position of vouching for its accuracy no less effectively than his signature could possibly have done. Under these circumstances his deposition was not rendered inadmissible on his own behalf by reason of the informality growing out of the absence of his signature; and the court committed error in sustaining plaintiff's motion to exclude it.
Other matters assigned as error and not specifically referred to herein may not appear upon the retrial of the case.
For the error noted it follows that the judgment rendered by the circuit court should be reversed and the cause remanded; and the Commissioner so recommends.
PER CURIAM.
The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed and the cause remanded.
ANDERSON, P. J., and HUGHES and McCULLEN, JJ., concur.