# MARKEY v. LOUISIANA & MISSOURI RIVER RAILROAD COMPANY, Appellant.

**Division One, December 22, 1904.**

1. **ATTORNEY: Authority To Represent Litigant: Jurisdiction.** The facts that a reputable member of the bar appears as the leading counsel for the defendant at the trial and conducts the trial on behalf of the defendant and makes the affidavit for appeal, are sufficient to justify the court in finding that he was authorized to agree that the case should be set down for trial on a certain day, and that thereby defendant waived the question of the venue jurisdiction of the court to try the cause.

2. **JURISDICTION: Appearance: Stipulation As To Trial.** A stipulation to set a cause down for trial on a certain day, signed by the attorneys of both parties and filed in the court, should be considered an unlimited appearance of defendant.

3. **RAILROAD: Leased Road: Liability for Lessee's Negligence.** A railroad corporation organized under the laws of this State, which leases its road to a company organized under the laws of another State, is, under the statute, liable to an employee of the lessee for injuries to him resulting from the lessee's failure to provide reasonably safe tools with which to work. So that an engineer in the exclusive employ of a corporation organized under the laws of another State which had leased the railroad of a corporation organized under the laws of this State can recover from the Missouri corporation for injuries received by the explosion of an engine belonging to the lessee while running on the lessor's road, if that engine was not reasonably safe.

4. ———: **Powers: Restriction.** A railroad company has no authority to lease its road or abandon its management to another company without permission of the State, and it follows, as a matter of course, that when such permission is given with reservations the company acting upon such permission is held within these reservations.

5. ———: **Liability of Lessor: To Employees and the Public.** The statute provides that a railroad corporation of this State leasing its road to a company organized under the laws of another State "shall remain liable as if it operated the road itself." *Held,* that this statute makes such lessor company liable not only to the public (passengers, shippers, etc.) but for neglect of duty that the lessee company owes its employees as well. The statute

holds the lessor company liable for injuries received by employees of the lessee due to the lessee's negligence as a master, as well as for injuries due to its negligence as a common carrier.

6. NEGLIGENCE: Explosion of Boiler: Knowledge. Where plaintiff's injuries were caused by the explosion of the boiler of a locomotive engine on which he was the engineer, the boiler being at the time and having been for several months badly out of repair, a fact that he did not know, and ordinarily, in the discharge of his duties, would not have discovered, the court should not sustain a demurrer to the evidence.

7. INSTRUCTION: Assumption of Fact. An instruction which assumes as true a fact admitted in the adversary's pleading, is not error.

8. ——: Knowledge: Inference. Evidence that the crown-sheet of the boiler of an engine, which exploded, had been worn until it was too thin for use, and the testimony of experts who examined it that it must have been in that condition for months, are evidence from which the inference might reasonably be drawn that the company knew it or would have known it if it had exercised ordinary care.

9. ——: Expert Testimony: Advisory. An instruction that told the jury "that the opinions of the witnesses as experts are merely advisory and not binding on the jury; and that the jury should accord to them such weight as they believe from all the facts and circumstances in evidence the same are entitled to receive," is not error.

10. EXCESSIVE VERDICT: $35,000: Passion and Prejudice: Incident During Trial. The plaintiff, a locomotive engineer, stood at the front of his calling, was capable, proficient, respected and trusted, and forty-five years of age, and was injured by the explosion of the engine, while the train was in motion, and as a result is a cripple, walks on artificial legs, and must seek other employment than that he had chosen. In the wreck he was pinned down with the weight of the engine bearing on the lower part of his legs, and so remained for two hours or more, and as a result both legs were amputated below the knees, and at the time of the trial, fourteen months after the accident, he was still suffering and there was ground for believing that he would suffer in the future. During the trial a wreck on the same road occurred near the town where the court was sitting, in which the locomotive engineer was killed and many persons injured, and this wreck was discussed on the streets, in hotels, in the court house, and members of the jury were seen in the crowds where the discussion was going on. *Held*, that this incident was a circumstance that might have influenced the jurors to return a verdict of $35,000, and that being an award

larger than this court has ever approved, the plaintiff is required to remit $15,000 as a condition of affirmance of the judgment.

Appeal from Audrain Circuit Court.—*Hon. E. M. Hughes*, Judge.

AFFIRMED ON CONDITION.

*Scarritt, Griffith & Jones* for appellant.

(1)  The circuit court of Audrain county had no jurisdiction of this cause for the reason that the suit was not commenced in the county where the cause of action accrued, or in a county where the defendant had or usually kept an office or agent for its usual and customary business.  Secs. 562 and 997, R. S. 1899; Byler v. Jones, 79 Mo. 261; Bank v. Knox, 47 Mo. 333; Vastine v. Bast, 41 Mo. 493; Graham v. Ringo, 67 Mo. 324.  The defendant by timely and reiterated action called in question the jurisdiction of the court by (1) a plea to the jurisdiction; (2) motion to dismiss; (3) demurrer; and (4) answer; and in each instance, upon the overruling of its contention by the trial court, saved its exception, and again called in question the action of the trial court in its rulings in respect to jurisdiction in its motions for a new trial and in arrest of judgment. (2) Answering over and appearance at trial do not waive exception to jurisdiction.  Little v. Harrington, 71 Mo. 390; Byler v. Jones, 79 Mo. 261; Fare v. Gunter, 82 Mo. 522; Brackett v. Brackett, 61 Mo. 222; Christian v. Williams, 111 Mo. 430, 35 Mo. App. 307.  (3)  The acknowledgment of service of notice to take depositions and the appearance of defendant's counsel, at the taking of those depositions and the cross-examination of witnesses, is not an entry of appearance of the defendant in court, nor does the act subject the defendant to the jurisdiction of the court.  A notary public as such is not an officer of the court.  Neither of the depositions in

this case was taken pursuant to an order or commission issued by the court, or by the clerk of the court. They were depositions taken by the plaintiff on his own initiative upon a mere notice of defendant's counsel before the issues were made up; in fact, before the return day of the writ of summons and before any pleading in the case had been filed by the defendant. Bentz v. Eubanks, 32 Kan. 321; Shirley v. Hagaar, 3 Blackf. (Ind.) 225; Higgins v. Beckwith, 102 Mo. 456; Grain Co. v. Mackler, 88 Mo. App. 186. (4) In the light of these authorities how can it with sincerity be contended that the alleged stipulation shown in this record, which was not signed by defendant's counsel but prepared on a mere postal card, requesting to have the docket arranged to suit counsel's convenience, which merely recited that the case might be set down for trial "for the 12th day of June or any day thereafter that week," when it was made before the return term began, and was for no other purpose than to indicate to the clerk the convenience of the parties, has the effect of subjecting the person of the defendant to the jurisdiction of the court when the first pleading on the part of the defendant was a plea to the jurisdiction and every subsequent pleading reiterated the same contention? It is so universally common in the Missouri practice in the circuits outside of the larger cities for hearings upon pleadings and motions to be taken up and disposed of when the case is called for trial as to preclude the idea that, by the use of the word "trial" in this alleged stipulation, the defendant intended to join the issue on the merits, and have a trial upon the merits alone, and not upon a plea to the jurisdiction, or motion to dismiss, or answer raising an issue as to the jurisdiction of the court. (5) The defendant is not liable under the allegations of the petition. The petition charges and plaintiff's alleged cause of action is based upon the proposition that at the time of the injury the plaintiff was under a contract of employment with the Chicago &

Alton Railway Company, which company was, by virtue of that relationship, obligated "to furnish plaintiff with a reasonably safe place in which to work, and reasonably safe appliances with which to work." Neither the defendant, nor any officer, servant or agent of the defendant, is charged with negligence, but through this petition it is sought to impute the alleged negligence of the agents of the Chicago & Alton Railway Company to the defendant for that the defendant did "license and permit said Chicago & Alton Railway Company under a running arrangement to run engines and cars upon its said road and right-of-way" on the day the plaintiff's injury occurred. Plaintiff's alleged cause of action is grounded upon a breach of duty by the Chicago & Alton Railroad Company which duty arose out of and was imposed upon the Chicago & Alton Railroad Company by virtue of a contractual relation between plaintiff and that company; and plaintiff's alleged cause of action is not grounded, nor does the petition charge it to be grounded, upon any violation of a franchise granted by the State of Missouri to the defendant, or of any public or private duty imposed upon defendant by reason of its ownership, or of its exercise of that franchise. There is no proof in this record tending to show that the defendant had any physical possession or right of control of the roadbed, rolling stock or operators of the railroad at the time and place where the plaintiff's injuries occurred. There is no proof that defendant owned or ever owned the engine whose alleged defective condition caused the injury, or that any officer, servant or agent of the defendant operated that engine, or was under any obligation to inspect or care for it. Indeed, the allegation of the petition is that the Chicago & Alton Railway Company operated its engines over the railroad, and that plaintiff was in the employ of the Chicago & Alton Railway Company when hurt. The leases from the defendant to the Chicago & Alton Railroad Company, and from that company

to the Chicago & Alton Railway Company, by express terms, divest the defendant of possession, management and control of the right-of-way, property and franchises and invests the Chicago & Alton Railway Company therewith. These are lawful leases for they are made with and have the express sanction of the laws of this State. R. S. 1899, sec. 1060. That law grants to any railroad company of this State the right to "lease" all or any part of its railroad, rights, franchises, real estate and other property in this State to a foreign or domestic railroad corporation "upon such terms as may be agreed upon between said companies respectively." Railroad v. Culbertson, 72 Tex. 375; Railroad v. Paul, 143 Ind. 23; Hukill v. Railroad, 72 Fed. 745; Arrowsmith v. Railroad, 57 Fed. 165; Nugent v. Railroad, 80 Me. 62; Mahoney v. Railroad, 63 Me. 68; 1 Redfield on Railroads, p. 68; Wood, Railway Law, sec. 490; Herron v. Railroad, 68 Minn. 542; Pierce on Railroads, 283; Miller v. Railroad, 125 N. Y. 118; Lee v. Railroad, 116 Cal. 97; Murch v. Railroad, 29 N. H. 36; Pierce v. Railroad, 51 N. H. 593; Railroad v. Curl, 38 Kan. 622; Caruthers v. Railroad, 59 Kan. 629; Hayes v. Railroad, 74 Fed. 279. (6) Section 1060, Revised Statutes 1899, did not create new liabilities. It does not impose upon the lessor railroad company any obligation to respond for damages to an employee of the lessee company caused solely by the negligence of the servants of the lessee company in the operation of the road. Its language confers express authority upon domestic railroad companies, and upon railroad companies organized under the laws of other States, to make leases from one to the other indiscriminately of all railroads within this State. And if a foreign railroad company takes over a railroad in this State, so much of the railroad as is within this State shall be subject to taxation, and the foreign railroad corporation "shall be subject to all regulations and provisions of law governing railroads in this

State; and a corporation in this State leasing its road to a corporation of another State . . . shall remain liable,"—liable for what? It is not yet clear what the scope of the liability is—"as if it operated the road itself;"—but what is the scope of the liability? Shall it remain liable for the promissory notes made by the lessee company after it had accepted the lease and assumed possession and control of the railroad thereunder? Liable for the debts due to employees of the lessee company for services performed for it solely at its request, or for debts due for materials furnished to the lessee company to repair its cars and rolling stock, or for cars and engines furnished to it? No; the language does not include so large a scope of liability. If not, it cannot rationally be concluded that these words make the lessor company liable for damages caused by the lessee company to one of its employees through the negligence of other of its employees when the lease was made under the sanction of the laws of Missouri. Smith v. Railroad, 61 Mo. 17; Main v. Railroad, 18 Mo. App. 388; Brown v. Railroad, 27 Mo. App. 394; McCoy v. Railroad, 36 Mo. App. 445; Stearns v. Railroad, 46 Me. 95; Price v. Barnard, 65 Mo. App. 649; Blackmore v. Railroad, 162 Mo. 455.

*Frank P. Walsh, John M. Cleary, George Robertson* and *E. R. Morrison* for respondent.

(1) Defendant waived all objections to the jurisdiction of the court over its person by appearing and stipulating to try the case on June 12th, and by accepting service of notice to take depositions and appearing and cross-examining witnesses on the merits of the case, without objecting to the jurisdiction of the court. Baisley v. Baisley, 113 Mo. 550; Bohn v. Devlin, 28 Mo. 319; Orear v. Clough, 52 Mo. 55; Peters v. Railroad, 59 Mo. 406; Tower v. Moore, 52 Mo. 118; Seay v. Sanders, 88 Mo. App. 478; Bankers' Life v. Shelton, 84 Mo.

App. 639; Griffin v. Van Meter, 53 Mo. 430; Crawford
v. Railroad, 171 Mo. 78; Bates & Wright v. Scott, 26
Mo. App. 430; Berry v. Trust Co., 75 Mo. 433; Page v.
Railroad, 61 Mo. 79; Wolff v. Danforth Co., 70 Mo. 182.
(2) No appeal was taken from the judgment of the
court on the issues raised by the plea in abatement.
That judgment still stands unappealed from and unre-
versed, and, therefore, the matters contained in that
plea have passed *in rem judicatum.* No motion to set
aside and for a new trial was filed within the statutory
four days after the rendition of the judgment. Except-
ions are, therefore, not properly preserved. Baisley v.
Baisley, 113 Mo. 550; McClure v. Paducah, 90 Mo. App.
574; Shockley v. Fisher, 21 Mo. App. 551; Kaufman v.
Schneider, 35 Ill. App. 256. (3) The defendant, being a
domestic corporation which has leased its road to a
foreign corporation, remains liable to plaintiff as though
operating the road itself. R. S. 1899, sec. 1060; Laws
1870, p. 89; Smith v. Railroad, 61 Mo. 17; State ex rel.
v. Railroad, 89 Mo. 535; McCoy v. Railroad, 36 Mo.
App. 445; Brown v. Railroad, 27 Mo. App. 394; Price
v. Barnard, 70 Mo. App. 179; Logan v. Railroad, 116
N. C. 940; Railroad v. Hart, 104 Ill. App. 57; Hardin
v. Railroad, 129 N. C. 354, 55 L. R. A. 784; Brown v.
Railroad, 131 N. C. 455; Railroad v. Ellett, 132 Ill. 660;
Railroad v. Whipple, 22 Ill. 109; Noyes, Intercorporate
Relations, sec. 216; Thompson, Law of Negligence, sec.
1955; Wood's Railway Law (Minor's Ed.), secs. 345,
490; Thomas v. Railroad, 101 U. S. 71; Railroad v.
Brown, 17 Wall. 445; Braslin v. Railroad, 145 Mass.
64; Harmon v. Railroad, 28 S. Car. 401; Railroad v.
Mays, 49 Ga. 355; Nelson v. Railroad, 27 Vt. 717; opin-
ion of Judge Adams in cases of Harmon v. Railroad,
and Keller v. Railroad. (4) The defendant admitted in
its answer that it owned the roadbed, right-of-way and
line of railway where plaintiff was injured. The as-
sumption in an instruction of an issuable fact, conceded
by the other party, or about which there can be no rea-

sonable controversy, is not erroneous. Plaintiff's first instruction was, therefore, not erroneous. Herriman v. Railroad, 27 Mo. App. 445; Field v. Railroad, 80 Mo. 206; Hall v. Railroad, 74 Mo. 298; Burlington v. Bank, 98 Mo. 376; Walker v. Kansas City, 99 Mo. 647. (5) Instruction 3 on the subject of expert testimony correctly declares the law. Copeland v. Railroad, 175 Mo. 662; Tel. Co. v. Light Co., 46 Mo. App. 142; Hoyberg v. Henske, 153 Mo. 74; City of Kansas v. Butterfield, 89 Mo. 648; State v. Darrah, 152 Mo. 542; Price v. Ins. Co., 48 Mo. App. 295; St. Louis Gas Light Co. v. Ins. Co., 33 Mo. App. 368; Railroad v. Hill, 93 Ala. 523; Humphries v. Johnson, 20 Ind. 190; Bridge Co. v. Olsen, 108 Fed. 335; Head v. Hargrave, 105 U. S. 45; The Conqueror, 166 U. S. 10. (6) The verdict of the jury is not excessive. Railroad v. Shelton (Tex. Civ. App.), 69 S. W. 653; Hall v. Railroad, 46 Minn. 439; Harrold v. Railroad, 24 Hun 184; Railroad v. Holland, 18 Ill. App. 418; Erickson v. Railroad, 32 N. Y. Supp. 915; Williamson v. Railroad, 53 App. Div. (N. Y.) 399.

VALLIANT, J.—Plaintiff was injured by the explosion of a boiler of a locomotive engine which he was operating in the service of the Chicago & Alton Railway Company on a railroad in this State owned by the defendant, the Louisiana & Missouri River Railroad Company, which road was leased by defendant to the Chicago & Alton Railroad Company, and by the latter to the Chicago & Alton Railway Company. The defendant is a Missouri corporation, the Chicago & Alton is an Illinois corporation. The accident occurred at a point on the railroad in Pike county, in October, 1900. There was a jury trial, a verdict for the plaintiff for $35,000, from which the defendant appealed.

I. The first question to which our attention is directed arises on the defendant's plea to the jurisdiction of the circuit court which tried the cause. The

suit was brought in the circuit court of Audrain county, through which county the railroad runs, but in which the defendant had no office or agent, being a resident of and having its office in the city of St. Louis, while the plaintiff was a resident of Saline county. The summons was addressed to the sheriff of the city of St. Louis and served on the defendant in that city.

On the return day of the writ the defendant filed a plea to the jurisdiction of the court based on the facts above stated, to which the plaintiff replied that defendant had previous to the filing of the plea entered its appearance, and was, therefore, estopped to deny the jurisdiction of the court. The acts which plaintiff relied on as supporting his reply were, 1st, that defendant had in writing waived notice and dedimus for taking depositions, had appeared at the taking of the depositions which related to the merits of the case and cross-examined witnesses, and, 2d, by a written stipulation filed in court, joined with plaintiff consenting that the action should be set down for trial in that court at the June term, on June 12, 1902.

Upon the trial of that issue the evidence showed the facts stated in the plea to the jurisdiction and also showed the facts stated in the reply thereto setting up the waiver of jurisdiction and entry of appearance.

Passing over the waiver of notice to take depositions and the appearance of the defendant at the taking of the same, we come to the stipulation to set the cause for trial. That stipulation is in these words: "Patrick Markey, plaintiff, v. Louisiana & Missouri River Railroad Company, defendant: It is agreed that the above-entitled cause may be set down for trial on the June term docket, 1902, for the 12th day of June or any day thereafter of that week. Frank P. Walsh, John M. Cleary and George Robertson, attorneys for plaintiff; F. Houston, C. A. Barnes, attorneys for defendant."

The evidence showed that Mr. Houston who lived in Kansas City was the general attorney for the defendant, that Mr. Barnes was an attorney residing in Audrain county, and was sometimes employed by Mr. Houston to assist him in cases pending in that county; he had no direct employment from the railroad company, but acted as its local attorney in that county when so requested by Mr. Houston, and held a pass over the road in which he was designated as local attorney. After the institution of this suit Mr. Barnes received a postal card, addressed "C. A. Barnes, Esq., Mexico, Mo.," and containing the following: "Kansas City, 5-6-'02. Dr. Sir: I find my La. docket which has several cases begins May 26th and Mexico June 2. I want to at once arrange (1) to have all my cases set close together, say in 2 days, and (2) to have them set as late as possible—or as late as June 11th. See Robertson or Clk and arrange this for me and oblige. Yrs. truly, F. Houston.

"Who is Cunningham's Atty? Have his case set 2 ds. after Markey case."

It was on authority of that postal card that Mr. Barnes called on Mr. Robertson and made and signed the agreement above set out, and mailed a copy of it to Mr. Houston at Kansas City. The original was filed in court.

There was an affidavit by the president of the defendant company to the effect that whilst Mr. Houston had in some matters acted as the attorney for the defendant by direction of the Chicago & Alton Company, yet he was never directly employed by the defendant to appear in the case of Patrick Markey, and was not empowered to consent to the jurisdiction of the Audrain circuit court, and that Mr. Barnes was never employed by the company and had no authority to act for it.

In the face of the fact that Mr. Houston, a reputable member of the bar of this court, appeared as the leading counsel for the defendant, conducted the trial

of this cause and made the affidavit for appeal, the circuit court was justified in concluding that he was the authorized attorney for defendant and that what he did through Mr. Barnes was done with authority. And the court was also justified in concluding that the stipulation filed in court to set the cause for trial on a certain day was an unlimited appearance of the defendant. The stipulation was not that the cause should be set for trial on the question of jurisdiction, as would have been proper if that had been in the minds of the attorneys, but that it should "be set down for trial," which meant, no limitation being specified, trial on its merits. The court ruled correctly when it decided against the defendant on the plea to the jurisdiction, on the ground that the defendant had previous to filing the plea entered its appearance.

II. The next point, which is the one on which the appellant's counsel chiefly rely, is that this defendant, which is the lessor of the railroad, is not liable for the failure of the Chicago & Alton Company, the lessee, to furnish its employee a reasonably safe engine to operate.

The facts are that the defendant owned the railroad, leased it to the Chicago & Alton Railroad Company in 1872, and that company sub-leased it in 1900 to the Chicago & Alton Railway Company, which alone was in possession and operating it, the plaintiff was the servant of the Chicago & Alton Company only, the defendant had nothing to do with his employment and nothing to do with furnishing the engine whose alleged defect caused the injury.

It has been the statute law of this State since 1870 that a railroad corporation of this State owning a railroad in this State may lease it to a railroad corporation organized under the laws of another State which owns a railroad coming to our border and connecting with the leased road so as to form a continuous line. But

the authority granted the railroad company to lease its road is given on certain express conditions, one of which is: "a corporation in this State leasing its road to a corporation of another State or licensing or permitting a corporation of another State, under any running arrangement, to run engines and cars upon its road in this State, shall remain liable as if it operated the road itself," etc.

A railroad company has no authority to lease its road, or abandon its management to another company, without permission of the State, and it follows of course that when such permission is given with reservations the company acting upon it is held within those reservations. Our statute gives such permission with the express reservation that the lessor "shall remain liable as if it operated the road itself." The language of that reservation is so comprehensive that, if it does not cover this case, it is difficult to suggest how it could be amended so as to embrace a case exactly like the case at bar, unless general terms should be discarded as ineffectual and resort be had to enumeration of the kind of cases in which the lessor should be held answerable. Yet we have in the brief of counsel for appellant a very learned argument, supported by a very respectable array of authorities, to sustain the proposition that the statute means only that the lessor company is to remain liable to the public, that is, to passengers, shippers, wayfarers, etc., for the non-performance of the duties imposed on the railroad company as a common carrier, but not liable for neglect of a duty that the operating company as master owed to one of its servants. There is a great deal said and well said on that side of the question, but the authorities are not all that way, and we are not convinced that such is the meaning of our statute. The briefs of the learned counsel on both sides will be printed with the report of this case and we cannot do better than to refer the inquirer to those briefs for the array and alignment of the authorities.

It is true that the duties the railroad company owes to the public are governed by the law of common carriers, whilst those of the company to its employees are founded primarily on the law of master and servant. But the law of master and servant is itself adjusted to the character of the service, just as the law of common carriers, the principles of which were established long before railroads were invented, is adjusted to the nature of the carrier's means of transportation. A railroad company, *quia* railroad company, owes a duty to its servant employed to operate a locomotive engine, different, if not in kind, at least in degree, from that owed by a common carrier to its servant employed to drive an ordinary road wagon. This is as much a duty devolving on a railroad company because the State has entrusted it with the extraordinary powers as is its duty in other respects to the public for the same reason.

In Logan v. Railroad, 116 N. C. 940, the court, discussing this subject, referred to the authorities which draw a line between cases in which the lessor is called to account by passengers, etc., and those where employees of the lessee company are plaintiffs, and said: "Looking to the fundamental principle upon which we rely to sustain our position, we see no sufficient reason for drawing any such line of distinction. While we know that there are courts which maintain, and others that deny, the correctness of this doctrine, yet if we apply the test, which we hold to be the true one, that the liability of the lessor grows out of the duty imposed with the privileges in the first instance, the same reason is found to exist for holding it liable to servants of the lessee for injuries sustained by them, as for those inflicted on passengers. [Spelling, supra, sec. 135.] A part of the original duty imposed by the charter was to compensate servants in damages for any injury they might sustain, except such as should be due to the negligence of their fellow-servants. The employee is deemed

in law to contract ordinarily to incur such risks as arise from the carelessness of the other servants of the company, but where the lessor company would be liable, if it had remained in charge of the road, to a person acting as its own servant we see no reason why it should not be answerable to him when employed by the lessee. Its implied obligation in the first instance—to come back to the touch-stone—was to compensate its own servants for injuries due to any cause other than the carelessness of their fellows, and the same rule must apply in its relation with the servants of the lessee. If the lessee would be liable, if sued jointly with the lessor company, then the demurrer cannot be sustained.''

The Illinois court, discussing the same subject, has said: ''We see no reason why such a distinction should be recognized as between the employers of the lessee company and other members of the public. Such employees are part of the general public.'' [Railroad v. Hart, 104 Ill. App. l. c. 63.]

This court, in Smith v. Railroad, 61 Mo. 17, held the lessor company liable for injury to the servant of the lessee under this statute, but the attention of the court does not seem to have been called to the particular point now being considered.

Our conclusion is that our statute holds the lessor liable as well for injuries received by the servants of the lessee, caused by the lessee's negligence in the capacity of master, as for liabilities incurred by the lessee for neglect of its duty as a common carrier.

III.   The evidence on the part of the plaintiff tended to prove as follows:

The plaintiff was a locomotive engineer in the service of the Chicago & Alton Railway Company, and had been so for several years. At the time of this accident he was operating a locomotive engine on this road, drawing one of that company's fastest passenger trains, when the boiler exploded and he received very

severe injuries.  The explosion was caused by the boiler being badly out of repair, as it had been so for several months, a fact, however, which plaintiff did not know, and ordinarily, in the discharge of his duties, would not have discovered.

At the close of plaintiff's evidence the defendant asked an instruction in the nature of a demurrer to the evidence, which the court refused.  That instruction was properly refused.

At the request of the plaintiff the court gave this instruction: "1.  The court instructs the jury that the defendant, under the law, is liable for the acts of the operating road as if the defendant operated its road itself, and if you find for the plaintiff you will return your verdict against this defendant, The Louisiana & Missouri River Railroad Company."

Appellant complains of that instruction on two grounds, that it holds the lessor liable for the acts of the lessee, which point we have already considered, and that it assumes a fact that ought to be proven, that the defendant company was the owner of the road at the point of the accident.  That fact is fully admited in the answer.  The petition describes the road, states the point of the accident, states that it was owned by the defendant who had leased it as above said.  In the 5th clause of the answer the defendant says: "it admits the leasing of its said roadbed, right-of-way and line of railroad to the Chicago & Alton Railroad Company, about 1872 as alleged in the petition."  There is no error in that instruction.

In the second instruction given for plaintiff, among the facts required to be found to entitle the plaintiff to a verdict was that the defect in the boiler "had existed for a length of time prior to the accident reasonably sufficient for the Chicago & Alton Railway Company to have discovered and repaired the same." Appellant contends that there was no evidence on which to base that part of the instruction.  The evidence was

that the crown sheet, from which the trouble came, was badly worn until it was too thin for use, and the experts who examined it said that it must have been in that condition for months. That was evidence from which the inference might reasonably be drawn that the company knew it or else would have known it if they had exercised ordinary care.

The court at the request of the plaintiff gave this instruction also: "3. The jury are instructed that the opinions of the witnesses as experts are merely advisory and not binding on the jury; and the jury should accord to them such weight as they believe from all the facts and circumstances in evidence, the same are entitled to receive." Appellant contends that was error.

In Hoyberg v. Henske, 153 Mo. 63, this court decided that such an instruction was correct, even in that case, where the expert testimony was that of learned witnesses in reference to an abstruse scientific subject. This instrution, therefore, must be held to correctly state the law on that subject, and the writer of this opinion must bow to it, although he dissented with all his might from the decision in that case.

We find no error in the instructions.

IV.   The verdict for the plaintiff was for $35,000.

Appellant contends that that is so excessive as to show that the jury were carried away by passion or prejudice.

Compensation for injury to life and strength cannot be calculated with certainty in dollars and cents like that for an injury to property. The making of the estimate is a very difficult task. The law imposes it primarily on the jury, and, therefore, courts, especially appellate courts, should be very slow to invade the jury's province. Yet between usurping the prerogative of the jury on the one hand and using the authority of the court to correct an excessive award on the other, there is room for very grave deliberation.

That this plaintiff has suffered both in mind and body to a distressing degree, is shown by the evidence. Before the accident he was a fine type of a man—forty-five years old, proficient in his trade, capable, respected, trusted. He stood at the front among men in his calling. The life before him was of pleasant anticipation. He is now a cripple, walks on artificial legs, and must seek other employment than that he had chosen.

In the wreck he was pinned down with the weight of the engine bearing on the lower part of his legs and he so remained for two hours or more until he could be dug out. As a result both his legs were amputated below the knees; at the time of the trial, which was fourteen months after the accident, he was still suffering and there was ground to believe that he would suffer in the future.

The evidence shows that while the case was on trial a wreck on the same road occurred near the town where the court was sitting, in which wreck the locomotive engineer was killed and many persons injured. The wounded were brought into the town and popular excitement ran high. The wreck was discussed on the streets, in the hotels, in the court house; members of the jury were seen in the crowds where the discussion was going on. Appellant contends that this incident had an unjust influence on the minds of the jury and affected the award.

It of course is impossible to know whether the jury were influenced by this incident or not, but we do know that it was a circumstance which might have influenced them. It was unfortunate that the jury were subjected to that influence. Under the evidence in the case we cannot see how the jury could have done otherwise than find a verdict for the plaintiff; therefore, it cannot be said that the finding that the plaintiff was entitled to recover was the result of prejudice or passion, even if we are apprehensive that the popular excitement had an undue influence in fixing the amount of damages.

.·  Thirty-five thousand dollars is a larger award than juries in this State usually render in such cases and is larger than this court has ever approved.. We prefer to adhere to the conservative course that our courts and juries have pursued in the past. If the jury had awarded the plaintiff $20,000 damages the verdict would have met our approval, but we are not satisfied that it would be just to affirm the judgment for the amount assessed. ·

If the plaintiff sees fit to remit $15,000 of his award within ten days we will affirm the judgment for $20,000, otherwise it will be reversed and the cause remanded for a new trial on the ground that the award is excessive.

All concur, except *Robinson, J.,* absent.