SAMUEL GOLD, Respondent, v. S. PIAN TIME PAYMENT JEWELRY COMPANY et al., Appellants.

St. Louis Court of Appeals. Argued and Submitted March 6, 1912. Opinion Filed April 2, 1912.

1. **LIBEL AND SLANDER: Sufficiency of Evidence.** In an action for libel, *held* that the publications complained of, if false, were libelous.

2. **APPELLATE PRACTICE: Reviewing Rulings on Evidence: Necessity of Exception.** The ruling of the trial court on the admissibility of evidence will not be reviewed on appeal, in the absence of an exception thereto.

3. **TRIAL PRACTICE: Appellate Practice: Objecting to Line of Testimony.** When a party has once objected to the admission of a certain line of testimony and saved his exception to the adverse ruling, he is not required to make further objections to the same character of testimony subsequently introduced, in order to have its admissibility determined on appeal.

4. **LIBEL AND SLANDER: Special Damages: Evidence.** While an action for the publication of a false and malicious libel may be maintained without proof of special damages, the plaintiff may prove any loss or injury sustained by him, to support the legal presumption of injury and to show its extent.

5. **TRIAL PRACTICE: Appellate Practice: Curing Erroneous Admission of Evidence: Instructions.** The erroneous admission of improper evidence to prove certain damages is cured by an instruction which charges the jury that they must not award damages under such evidence.

6. **APPELLATE PRACTICE: Reviewing Rulings on Evidence: Presumptions.** The exclusion of a leading question will be presumed, on appeal, to have been on the ground that it was leading, where the ground of objection does not appear, and the court had permitted questions calling for the same character of testimony to be answered, when not leading.

7. **LIBEL AND SLANDER: Party Meant: Evidence.** In an action for the publication of a libelous article, which did not mention plaintiff by name, testimony of witnesses as to their understanding of whom it was intended to be applied to, is admissible, but is not controlling on the jury.

8. **DEFINITIONS: Yiddish Language.** Yiddish is a language written in Hebrew characters and used by German and other Jews, being a middle German dialect developed under Hebrew and Slavic influence; Judea-German.

9. **LIBEL AND SLANDER: Party Meant: Instructions.** In an action for libel for the publication of an article published in Yiddish, which did not mention plaintiff by name, an instruction requested by defendant, requiring the jury to find that the defendant intended the language used to be understood "by the public generally" as referring to plaintiff, was properly refused; it being sufficient if the publication was understood by those acquainted with plaintiff or the surrounding circumstances to be aimed at plaintiff.

10. ———: **Gist of Action.** The gist of an action for libel is, that the plaintiff is injured by the publication, in the estimation of those who may know or deal with him, and damages occur by reason of the publication coming into the hands or under the notice of those who can read or understand the language in which it is published and who had such acquaintance with the parties or the surrounding circumstances as to identify plaintiff as the person referred to.

11. ———: **Party Meant: Instructions.** In an action for the publication of a libelous article, which did not mention plaintiff by name, the refusal of an instruction, requested by defendant, that if the jury should believe the article complained of was in the nature of an advertisement, and was intended by defendant as not referring especially to plaintiff; but to all persons engaged in a named business, the jury should find for defendant, although the article would have been libelous if applied to a particular individual, was not error, notwith-

standing it was fairly correct, where other instructions given clearly required the jury to find that the publication referred to plaintiff.

12. INSTRUCTIONS: Refusal: Covered by Other Instructions. It is not error to refuse a proper instruction where its subject-matter is covered by other instructions given.

13. LIBEL AND SLANDER: Instructions: Assuming Truth of Disputed Facts. An instruction, in an action for libel, that punitive damages are awarded to punish defendants for the wrongful act, but are not allowed unless, in doing the thing complained of, defendants were actuated by feelings of ill-will or hatred or a reckless disregard of the consequences of their act, and a further instruction, that if the alleged libelous article was false and imputed to plaintiff things which would prejudice and be injurious to him, and was published as described in the evidence, the verdict should be against defendants, are not open to the objection that they assume as a fact that the act complained of was the act of defendants and was wrongful, when considered in connection with another instruction, which correctly defined a libel and the term "malice," and which charged that if the article complained of was published of and concerning plaintiff, was not true, and was a libel on plaintiff, the law presumes it was published maliciously.

14 INSTRUCTIONS: Assuming Truth of Disputed Facts. An instruction which assumes the truth of material facts that are disputed is erroneous.

15. ———: Rules for Interpretation. An instruction should be construed with reference to the other instructions given.

16. LIBEL AND SLANDER: Province of Court and Jury: Instructions: Conflict. In an action for libel against a corporation and its president, instructions that if the alleged libelous articles were published at the instance of the individual defendant and if at the time of the publication he was an officer of the defendant company and participated in the publication of the articles and in causing them to be published, he was responsible, if they were libelous, and that if the articles were intended by defendants to refer to plaintiff, and were so understood by the persons who read them, they were libelous in character, if false and untrue, did not conflict with another instruction that the jury were the sole judges of whether the articles were libelous; and said instructions, taken in connection with another instruction defining libel and stating that if the articles were published of and concerning plaintiff, were not true, and were a libel on plaintiff, the law presumed they were published maliciously, properly submitted the question of whether the articles were libelous.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

AFFIRMED.

*Thos. B. Harvey, C. L. Gallant* and *William Baer* for appellants.

(1) The court erred in admitting over appellants' objections, evidence of special damages to the business of respondent, the petition not pleading damages of such character. Townsend on Slander & Libel (4 Ed.), p. 263; 25 Cyc., p. 475 (c); Hermann v. Bradstreet, 19 Mo. App. 231; Nicholson v. Rogers, 129 Mo. 140; Friedman v. Pub. Co., 102 Mo. App. 694. (2) Harmful error was committed in refusing to permit appellants to prove by witness Frank Kohan that he did not understand any of the alleged libelous advertisements to refer to the respondent. 18 Am. & Eng. Ency. Law, p. 996; Crecelius v. Biernon, 59 Mo. App. 522; Caruth v. Richeson, 96 Mo. 186; 17 Cyc., p. 40. (3) The court erred in refusing instruction No. 4 requested by the appellants. 17 Cyc., pp. 40, 45; Hawes v. Brownlee, 63 Ala. 277; Julian v. Star, 209 Mo. 75; Feed Co. v. Railroad, 129 Mo. App. 494; Berry v. Rood, 209 Mo. 676; Robertson v. Stark, 15 N. H. 109; Smarth v. Blanchard, 42 N. H. 107. (4) The court erred in refusing appellants' instruction No. 5 which told the jury that if the alleged libelous publications were intended to refer to a class of dealers in jewelry, and not to the plaintiff in particular, then the jury should find for the appellants. 25 Cyc. 363 (b); 18 Am. & Eng. Ency. Law, p. 994; White v. Delavan, 17 Wend. 49; Girard v. Beach, 3 E. D. Smith 337; 25 Cyc. 426.

*Stern & Haberman* for respondent.

(1) Regarding the complaint at page 12 of appellants' brief, respecting admission of certain testi-

mony of witness Katernick. Peck v. Traction Co., 131 Mo. App. 134; Fowles v. Bebee, 59 Mo. App. 401; Wilson v. Railroad, 142 S. W. 775; Anderson v. Railway, 161 Mo. 411. (2) The court committed no error in the ruling respecting the testimony of the witness Kohan. Lewis v. Humphreys, 64 Mo. App. 446; Julian v. Star, 209 Mo. 35. (3) Regarding appellants' refused instruction No. 4. 25 Cyc. 362; Farley v. Publishing Co., 113 Mo. App. 216; Caruth v. Richeson, 96 Mo. 186; Morris v. Sailer, 154 Mo. App. 375. (4) Regarding appellants' refused instruction No. 5. 25 Cyc. 362; Caruth v. Richeson, 96 Mo. 186; Fenstermaker v. Tribune, 35 L. R. A. 611; Maybee v. Fisk, 42 Barb. 326; Ryer v. Journal, 11 Daly, 251. (5) Regarding respondent's instructions 3 to 8. Magnet v. O'Neill, 51 Mo. App. 35; Farley v. Publishing Co., 113 Mo. App. 216; Morris v. Sailer, 154 Mo. App. 305; Dobbin v. Railroad, 157 Mo. App. 689; Ukman v. Daily Record, 189 Mo. 378; Arnold v. Jewett, 125 Mo. 241; State v. Armstrong, 106 Mo. 395.

REYNOLDS, P. J.—This is an action by plaintiff, respondent here, against the S. Pian Time Payment Jewelry Company, a corporation, and S. Pian, its president, for libelous publications, charged to have been levelled at plaintiff. The matter complained of was published in a daily newspaper in the city of St. Louis and is in "Yiddish," it being charged that plaintiff and the defendant company are carrying on business as dealers in jewelry on the time payment plan, their places of business within a short distance of each other, and that both seek their custom in the same neighborhood and among the same class of people, namely, people who speak, understand and read Yiddish. There are six counts in the petition, based on six publications of the newspaper, each count claiming $2000 actual and $3000 punitive damages. The articles published and as translated into English contain

no reference by name to plaintiff or to anyone else and appear to have been in the style of blank verse. They are advertisements of the appellant corporation and warn people against others engaged in the business, and particularly refer to a dealer designated as "a notorious—crippled-dealer;" "that crippled second-hander;" "the crippled swindler;" that the advertiser proposes to tell the public where to buy "the best goods and best articles cheaper than before, to the chagrin (literally 'busting') of our crazy, rotten, bitter competitor, who goes about telling things about us that never happened;" that "it is no wonder that the lame one goes about barking; he is unable any longer to skin every one;" "do not listen to the foolish liar, the lame peddler;" "do not buy old rusted goods from the straw-dealer;" "the lame, crippled informer goes about telling you all kinds of talk, do not listen to him for it is all as false as he is himself;" "but whose fault is it, if no one cares to buy from an informer;" "and therefore all the customers run from him and into our store they all run to buy. That makes him more crazy and he makes use of his European tricks;" "the years have gone for the lame cripple, he gets no longer money for nothing;" "and about the lame cripple—do you already know what he means;" "from selling things cheap the lame one wants to keep us;" "hence from us you cripple, you know not the difference between yes and no;" "skinning a customer was in fashion once, but not to-day;" "can be seen how the lame one kept his customers tied up;" "how the crippled merchant fooled every one is known now to rich and to poor;" "enough has he fooled us and skinned us, in spite of the fact that he is limping, stinking and rotten;" "but no longer can the lame one with his false words fool us;" "what falsehoods there are in the 'crooked one's' words, we need no longer write about him, a liar, an informer he must remain forever;" "at this all the crippled dealers will surely open their

mouths;" " not for nothing do they cry, beg and threaten, stop selling so cheap and causing us such losses, specially one who is known to all with his tricks." These are samples of the matter in the publications, it being charged that all of these publications were of and concerning plaintiff, in the issues of the newspaper on the various dates set out in the several counts of the petition, and it being averred that the publications were made by defendants falsely and maliciously, and that the language used was false, malicious and libelous and without justification as defendants and each of them well knew, and that by the use of the words "crippled dealer," and other expressions in the publications, defendants meant to publicly point out and did point out plaintiff and did intend to apply to him all the matters and things in the publication stated.

Defendants demurred to the petition as not stating facts sufficient to constitute a cause of action. The demurrer was overruled and defendants thereupon filed their motion to make the petition more definite and certain. This was overruled.

It appears that the petition originally charged that the matter complained of referred to plaintiff "and reflected and was intended to reflect on him individually *and in his business*." By leave of court these italicized words were stricken out. The motion of defendants to make the petition more definite and certain was overruled. Defendants thereupon demurred to the petition as above amended and moved to strike out certain other portions thereof relating to plaintiff's business. The demurrer was overruled.

The answer was a general denial.

The trial was before the court and a jury, resulting in a verdict for plaintiff and against both defendants on each count of the petition, awarding plaintiff $200 actual and $200 punitive damages on each count, a total of $2400. Filing a motion for new trial, as also

one in arrest of judgment, both of which were over-
ruled, defendants have duly perfected their appeal to
this court, having saved exceptions to the adverse rul-
ings of the trial court.

It is sufficient to say of the evidence in the case
that on the part of plaintiff tended to show the pub-
lication by the defendant corporation and that the
matter complained of had been inserted in the paper
as advertisements of the business of the corporation
defendant, by the direction of defendant Pian, as its
president. It was also in evidence that plaintiff was
slightly crippled, walking with a limp or impediment,
and there was evidence tending to show that the per-
sons in the part of the community in which the parties
lived and among whom the paper was circulated, and
who could read or who understood Yiddish, under-
stood that plaintiff was the person referred to in these
several publications.

On the part of defendants, the evidence tended to
show that the reference was not to plaintiff but to
peddlers who had been going about representing them-
selves to be acting for the defendant corporation.

That the publications were libelous, if false, is
beyond question, and so the jury found. Indeed, the
learned counsel for appellants make no controversy
over that. The real question, the sole question, is
whether the libelous words refer to plaintiff.

Counsel for appellants make six points or assign-
ments of error upon which they rely for a reversal of
the judgment. We will consider them in their order.

First. It is urged that the court erred in admit-
ting, over appellants' objection, evidence of special
damages to the business of respondent, the petition
not pleading damages of such character. The testi-
mony referred to as meeting this assignment is that
a witness for plaintiff, testifying, was asked what he
had done after reading these publications. To which

he answered that he quit selling plaintiff goods; that he had some more goods but did not want to sell plaintiff any more. Plaintiff had about $1500 of goods on hand to sell for this witness and the witness made him give them back to him. Witness was asked if these publications in the paper destroyed his confidence in plaintiff. This was objected to as suggestive. The court admonished counsel not to lead him, whereupon counsel for plaintiff asked the witness if it was after reading these advertisements he had made plaintiff give back the diamonds he had left with him and the witness answered, "Yes." This is the only evidence that is pretended to sustain this assignment of error. The trouble with this assignment is that no exception appears to this particular ruling. The only objection which is here called to our attention is that it was suggestive. When that was made the court admonishing counsel not to lead witness, whereupon the question was put in proper form and witness answered it. There was no other or further objection to the question, nor any motion to strike out the answer. Counsel for appellants claim that testimony of the character referred to was admitted over proper objection. An examination of the abstract hardly sustains this contention. It appears that after this witness, who was being examined on part of plaintiff, had testified that he had read these publications and that he understood all of them to refer to plaintiff, and before he was asked the questions above noted, was asked if the reading of these advertisements, especially the earlier ones, had any effect on him in regard to his dealings with plaintiff. Counsel for defendants objected to that as incompetent and immaterial, there being no averment of damages to any business resulting from the publications. This objection was overruled and exception duly saved by counsel for defendants. The witness then answered that it had. Then followed the questions and answers which we have before quoted.

It is doubtful whether the objection above noted can
be construed as covering this latter testimony. It is
true that a party having once objected to the admis-
sion of a certain line of testimony and saved his ex-
ception to an adverse ruling, is not required to renew
that objection at each offering of like testimony. The
rule as to this is so clearly announced by Judge San-
born, speaking for the United States Circuit Court
of Appeals of this circuit, Judges Caldwell and Thayer
concurring, in Salt Lake City v. Smith, 104 Fed. Rep.
457, l. c. 470, that we venture to quote from it. It is
to the effect that the single objection which counsel
makes when the line of testimony is first undertaken
to be entered upon, and the single exception which they
then took and by which they saved their objection,
presented the entire question of the introduction of
this line of testimony, "and elicited a ruling of the
court upon it which was conclusive and controlling
at that trial of this case. There was no reason or call
for further objections to evidence of this character,
and their only effect would have been to annoy the
court and to delay the trial. When a question has
once been fairly presented to the trial court, argued,
and decided, and an exception to the ruling has been
recorded, it is neither desirable nor seemly for counsel
to continually repeat their objections to the same class
of testimony, and their exceptions to the same ruling
which the court has advisedly made as a guide for the
conduct of the trial. Counsel . . . lost nothing
by their failure to annoy the court by repeating an
objection which it had carefully considered and over-
ruled." [See, also, Reynolds v. Publishers: George
Knapp & Co., 155 Mo. App. 612, l. c. 621, 135 S. W.
103.] Passing that, however, we are not persuaded
that the admission of this testimony, and this is the
only testimony of like character, was error. The
case at bar presents a cause of action maintainable
without proof of any special damages. If false and

published maliciously, the publications were libelous (Revised Statutes 1909, section 4818), and special damages need not be proven. But even in such cases, Mr. Newell, in his work on Slander and Libel (2 Ed.), at page 864, section 36, states this to be the rule: "Where it is clear that the action lies without proof of any special damage, any loss or injury which the plaintiff has sustained in consequence of defendant's words, even after action brought, may be proved to support the legal presumption, and to show from what has actually occurred how injurious and mischievous the words were." So, also, Odgers on Libel & Slander (4 Ed.), page 308, states the rule. Over and above these rules, however, whatever error there may have been in the introduction of this single piece of testimony as to the loss of business, we hold that it was entirely cured by the action of the learned trial judge in the instruction which he gave at the instance of defendants, to the effect that if the jury found a verdict for plaintiff, they "cannot assess any damages by reason of any loss or damage to plaintiff's business." [Anderson v. Union Terminal R. Co., 161 Mo. 411, l. c. 420, 61 S. W. 874; Harrison v. Kansas City Electric Light Co., 195 Mo. 606, l. c. 635, 93 S. W. 951; Peck v. Springfield Traction Co., 131 Mo. App. 134, l. c. 141, and cases there cited (110 S. W. 659).] This first assignment of error is untenable.

Second. It is insisted that harmful error was committed in refusing to permit appellants to prove by a witness that he did not understand any of the alleged libelous advertisements to refer to respondent. This same question was asked by counsel for respondent in the examination of most all of his many witnesses and also by appellants of their witnesses, and allowed. That is practically all the witnesses were asked; as to whom they understood the publications referred. Clearly the question was not excluded by

the court on the ground of the incompetency of this line of testimony. But when these questions were asked and the objection interposed to the form as leading, the court almost invariably changed the form of the question or directed counsel to change its form. The ground of objection to this question is not stated, but we cannot assume that the objection was sustained because the court considered that line of testimony incompetent, for he had held all through the case directly to the contrary, and as we are to assume everything in favor of the correctness of action of the trial court, we must assume that the objection to this question was sustained because it was leading, as it was. We see no reversible error in this action of the court and cannot sustain this assignment.

. Third. Error is assigned to the refusal by the court of the fourth instruction asked by appellants. That instruction is as follows: "The court instructs the jury that, although they may believe and find from the evidence that some persons who read the published articles understood the alleged libelous language thereof to refer to the plaintiff, yet the fact that said persons did so understand is not conclusive upon the jury, and the jury are not required to substitute the opinion of said persons for the opinion of the jurors in regard to whether or not the language was intended by defendant to apply to the plaintiff; but the jurors must determine for themselves, in view of all the circumstances and in view of all the statements and beliefs and opinions of the various witnesses on both sides of the case, whether or not the defendant, in publishing the alleged libelous language, intended that it should be understood by the public generally as pointing out and referring to the plaintiff; and the burden of establishing that fact is upon the plaintiff."

It is argued that the effect of this instruction was to warn the jury against substituting the opinion of

witnesses for their own opinion and to tell them they must form their own opinion from all the circumstances in evidence, including the opinion of witneses, as to whether or not the advertisements pointed out were intended to be applied to respondent. This opinion  evidence, if we may use that term for  brevity, although strictly .speaking it is not usually so classified, that is evidence of the understanding of persons acquainted with the parties, or familiar with the circumstances covered by the libel, as shown by all the authorities, is always  admissible,  although not controlling. In addition to the authorities cited by counsel we cite a few.

In Starkie on Slander and Libel (5 Ed.), p. 401, it is said: "But where a libel does not necessarily impute misconduct to the plaintiff, the jury are not bound to adopt either the innuendos or the opinions of the witnesses." This is almost a literal quotation of the observation of Mr. Justice Maule in Broome v. Gosden, 1 C. B. 728, l. c. 731. This is so, even in prosecutions for criminal libel (Starkie, p. 820). [See, also, Newell on Slander and Libel (2 Ed.), p. 259.]

In Hoyberg v. Henske, 153 Mo. 63, l. c. 74, 54 S. W. 450, affirmed on this in Markey v. Louisiana & M. R. R. Co., 185 Mo. 348, l. c. 364, 84 S. W. 61, and in King v. Gilson, 191 Mo. 307, l. c. 329, 90 S. W. 367, it is held that jurors are not bound to accept the opinion of expert witnesses, if they deem them unreasonable. In Hoyberg v. Henske, supra, Judge VALLIANT dissented as to this, but in Markey v. Railroad, supra, he accepted it as settled law and concurred in the opinion in King v. Gilson, supra. While the point in these cases arose over the testimony of professional men or experts, we see no reason to limit it to such cases, nor why it should not be extended to all classes of cases in which witnesses are permitted to state their understanding of a fact, or of words, as was the case

in Julian v. Kansas City Star Co., 209 Mo. 35, 107 S. W. 496. In fact, where, as in the case at bar, no names are mentioned and it is sought to identify plaintiff as the one libeled, we know of no other way to do so than to take the opinion of those who read it or had knowledge of it, and of the parties and surrounding circumstances.

But while this part of this refused instruction states the law correctly, the remainder of it must be considered. It will be observed that after telling the jury as above, that although they may believe from the evidence that some persons who read the published articles understood the alleged libelous language to refer to plaintiff, yet the fact that such persons did so understand it is not conclusive upon the jury and that the jury are not required to substitute the opinions of such persons for their own opinion in regard to "whether or not the language was intended by *defendant* to apply to the plaintiff; but the jurors must determine for themselves, in view of all the circumstances and in view of all the statements and beliefs and opinions of the various witnesses on both sides of the case, whether or not *the defendant,* in publishing the alleged libelous language," etc. There were two defendants in this case, the corporation and its president. But we hardly think that the use of the singular noun instead of a plural confused the jury, or that for this error the learned trial court refused this instruction.

We are led to the conclusion that this instruction was erroneous for another reason. After the language above quoted, the instruction proceeds to say that the jury are to determine that the defendant, "in publishing the alleged libelous language, intended that it should be understood by the public generally as pointing out and referring to the plaintiff." That is not the law. The evidence in the case shows that the publica-

tion was in Yiddish. It is impossible to conceive that the public generally are familiar with or in fact at all understand Yiddish. Yiddish, as defined by Webster's International Dictionary (Ed. 1910), is "A language used by German and other Jews, being a middle German dialect developed under Hebrew and Slavic influence; Judea-German. It is written in Hebrew characters." It appears, however, by the testimony here that the Yiddish of the publications involved is that of the Russians, not of the Germans. In telling the jury that the public generally should have understood the publications as pointing out and referring to plaintiff, the jury would have been wrongly instructed. Mr. Odgers, in his work before referred to, at pages 146 and 634, cites Bourke v. Warren et al., 2 C. & P. 307, for this. There at page 310, it is said: "It is not necessary that all the world should understand the libel; it is sufficient if those who know the plaintiff can make out that he is the person meant." Citing Bourke v. Warren, as also Broome v. Godsen, 1 C. B. 728, Mr. Odgers further says: "And whenever the words spoken or written, though plain in themselves, apply equally well to more persons than one, the plaintiff may also call at the trial his friends, or those acquainted with the circumstances, to state that on reading the libel they at once concluded that it was aimed at the plaintiff." That author also says (p. 144): "If the plaintiffs 'are so described that they are known to all their neighbors as being the parties alluded to; and if they are able to prove to the satisfaction of a jury that the party writing the libel did intend to allude to them, it would be unfortunate to find the law in a state which would prevent the party being protected against such libel,'." citing and quoting from Lord Chancellor Cottenham in Le Fanu v. Malcolmson, 1 H. L. C. (1848) 637, l. c. 664. [See, also, to the same effect, Newell, supra, section 24, page 259.] All of which demonstrates by authority that it

is not necessary, in a publication of the character complained of, where no one's name is mentioned, that all the world, or the public generally, should understand that plaintiff was the party aimed at and intended by the publication but merely that those acquainted with plaintiff and defendant, or with the plaintiff, or with the surrounding circumstances, should understand that the publication was aimed at plaintiff. This would seem to be sound reasoning. The very gist of the action for libel is that the plaintiff is injured by the publication in the estimation of those who may know him or deal with him, in his reputation, character or property. The damage occurs by reason of the publication coming into the hands or under the notice of those who could read or understand the language in which it was published and had such acquaintance with the parties or surrounding circumstances as to be apt to identify plaintiff as the person referred to, his name not being used. He could not be injured in the estimation of the public generally unless it appeared both that the public knew him and on reading it would apply it to him. The sting of it consists in the fact, if proven, that it came into the hands of persons who knew plaintiff and defendants, or certainly knew plaintiff, and knew of his physical peculiarities, possibly, also, were aware of the fact that plaintiff and defendants were in the same line of business, and would understand it as intended to apply to plaintiff by reason of the publication. For these reasons this instruction was properly refused.

Fourth. It is assigned as error that the court refused the fifth instruction asked by defendant. By this it was sought to instruct the jury that although they might believe and find from the evidence that the language complained of as libelous was in the nature of an advertisement by the defendant of his business and his goods and was intended by defendant as not referring especially to plaintiff but to all persons engaged in the retail jewelry business or in the jewelry

business on the time payment plan and was intended
to refer to a class of dealers in jewelry and not to plain-
tiff in particular, then the finding must be for defendant
although the jury should believe and find that the
language was of libelous character if it had been ap-
plied to a particular individual. This instruction, al-
though somewhat involved, is fairly correct. It is the
law that "though the words used may at first sight
appear only to apply to a class or number of persons,
and not to be specially defamatory of any individual,
still an action may be maintained by any particular
member of that class or number who can satisfy the
jury that the words referred solely or especially to
himself." [Odgers, Par. 2, pages 141 and 143; Newell,
page 259, par. 24.] We think that this rule was so
clearly announced by many instructions given, and the
jury had so clearly before them the necessity of finding
that the publication particularly referred to plain-
tiff, that the refusal of this instruction cannot be held
reversible error.

Fifth. It is assigned as error that in giving the
second instruction on behalf of plaintiff, the court com-
mitted error in the third paragraph of that instruction,
which is as follows: "Punitive damages are awarded
for the purpose of punishing the defendants for the
wrongful act, and setting an example before the com-
munity, but are not allowed unless the evidence is suf-
ficient to satisfy the jury that in doing the thing com-
plained of the defendants were actuated by feelings
of ill-will or hatred towards the plaintiff or reckless
disregard of the consequence of the act."

It is argued that this language was tantamount to
the court telling the jury that the thing complained
of was the act of the appellants and that it was wrong-
ful, which it is claimed were the controverted issues
in the case. It is also contended that this instruction
and instructions 3 to 8 inclusive, given in behalf of re-
spondent, are open to the same objection, with the ad-

ditional objection that in the last clause of instructions
3 to 8, this language is used: "Therefore, if you find
from the evidence that the above mentioned advertise-
ment, in so far as the same referred to plaintiff, was
false and imputed to the plaintiff things which would
prejudice him in his good name and be injurious to
his reputation, and hold him up to ridicule and con-
tempt, and was published as described in evidence,
then your verdict must be in favor of the plaintiff and
against the defendants on the first count of the peti-
tion."

Learned counsel for appellants in referring to
their objection to the third paragraph of instruction
No. 2, say that it would be superfluous to cite to the
court any authority in support of the proposition that
the law zealously gives the right to the jury to pass
upon and determine the facts and that it is reversible
error for the court in its instructions to the jury to as-
sume the existence of a material fact. We grant that.
But when this third paragraph of the instruction is
read in connection with the first instruction, which cor-
rectly defined a libel and the meaning of the word "mal-
ice," and told the jury that if they believed that "the
article complained of was published of and concerning
plaintiff, and was not true and was a libel on plaintiff,
then the law presumes it was published maliciously,"
we do not think this paragraph open to this criticism
of counsel. We are unable to agree that this para-
graph of instruction No. 2, or instructions 3 to 8, as-
sume the existence of any material fact in the case.

Sixth. The sixth point relied upon by the learned
counsel for appellants is that these instructions 3 to 8
inclusive in the first section of the second paragraph of
each of them are in conflict with instruction No. 9, given
on behalf of appellants. It is argued that these six
instructions, stripped of unnecessary verbiage, tell
the jury that the alleged publications were libelous if
false and that instruction No. 9, given at the instance

of appellants tells the jury that they are the sole judges as to whether the articles complained of are libelous or not. In substance, these instructions 3 to 8 told the jury, that if they found that the advertisements described and referred to in evidence were published in the paper at the instance of the defendant S. Pian and at the time of the publication he was an officer of the defendant company and participated in the preparation of the advertisements and in causing the same to be published, he is also responsible therefor if they are libelous, and that if the jury believed from the evidence that the advertisements referred to in the several counts were intended by defendants to refer to plaintiff and were so understood by the persons who read said advertisements, then the court instructed the jury that they were libelous in character if they were false and untrue.

Instruction No. 9, given at the instance of defendants, is as follows: "The jury are instructed that they are the sole judges as to whether the articles complained of are libelous or not."

We are unable to see the slightest conflict between instructions 3 to 8 and this instruction. By these instructions the court in no manner whatever infringed upon the constitutional right of the jury to determine on the question of libel or no libel. The court in its first instruction distinctly and correctly told the jury that "a libel is a malicious defamation of a person, made public by any printing or writing which tends to provoke him to wrath or expose him to public hatred, contempt or ridicule, or deprive him of the benefits of public confidence and social intercourse," and that if the jury believed that the articles complained of were published of and concerning plaintiff and were not true and were a libel on plaintiff, then the law presumes that the articles were published maliciously. This left the fact of libel to the jury, and in the six instructions complained of, especially when read wtih this first

instruction, there can be no doubt that the court left the law and the facts for the determination of the jury and this instruction No. 9, instead of being in conflict, is in entire harmony with these six instructions. This we understand to be the holding of our Supreme Court in Julian v. Kansas City Star Co., supra, on this very same contention.

This disposes of all the points made by the learned counsel for appellants and on consideration of the whole case we find no reversible error.

The judgment of the circuit court is affirmed. *Nortoni* and *Caulfield, JJ.*, concur.