## AGNES KETTLEHAKE, Respondent, v. AMERICAN CAR & FOUNDRY COMPANY, Appellant.

**St. Louis Court of Appeals, February 4, 1913.**

1. **APPELLATE PRACTICE:** Trial Practice: Demurrer to Evidence: Review.  The propriety of overruling a demurrer to the evidence is to be determined on a consideration of the evidence introduced by plaintiff.

2. **MASTER AND SERVANT:** Action for Death of Car Repairer: Sufficiency of Evidence.  In an action for the death of a car repairer, who, while working under a car being built by defendant, was run over by reason of a train of cars operated by defendant striking the car under which he was working, evidence that no warning was given him of the approaching train *held* sufficient to take the case to the jury on the question of defendant's negligence.

3. **APPELLATE PRACTICE:** Conclusiveness of Verdict.  A verdict rendered on conflicting evidence is conclusive on appeal.

4. ———: Trial Practice: Sufficiency of Objection to Evidence. An objection to the introduction of evidence on the ground it is immaterial is too general to constitute a foundation for an assignment of error.

5. **TRIAL PRACTICE:** Appellate Practice: Objection to Line of Evidence.  Where an objection to evidence is made and an exception is saved to the overruling of the objection, it is unnecessary to object to the same character of testimony subsequently introduced.

6. **DEATH BY WRONGFUL ACT:** Evidence: Financial Condition of Widow.  In an action by a widow for the death of her husband, under Sec. 5425, R. S. 1909, evidence that plaintiff had no other means of support than her husband is admissible.

7. ———: Measure of Damages: Instructions.  In an action by a widow for the death of her husband, under Sec. 5425, R. S. 1909, an instruction that if the jury found for plaintiff, they should award her not less than $2000 and not more than $10,000, as they might deem fair and just under the evidence, with reference to the necessary injury resulting to her from the death of her husband, and in determining what such injury is, they should consider all the evidence bearing upon that subject, was correct.

8. **MASTER AND SERVANT:** Action for Death of Car Repairer: Assumption of Risk.  In an action for the death of a car re-

pairer, who, while at work under a car being built by defendant, was run over as the result of said car being struck by a train of cars operated by defendant without any warning being given of its approach, *held* that decendent did not assume the risk of injury as a matter of law.

9. ———: ———: ———: **Liability of Master.** The employer's duty to furnish his employees a reasonably safe place in which to work is a continuing one, and hence where a car under which an employee was working was safe at the time he commenced work, but was subsequently made unsafe by the employer's negligence in causing a train of cars to strike it, without giving warning to the employee, as result of which he was killed, the employer was liable for his death, and a recovery could not be denied his widow, in an action under Sec. 5425, R. S. 1909, on the theory that he assumed the risk of injury.

10. ———: ———: ———: **Safe Place to Work.** An employee may assume, in the absence of contrary knowledge, that the employer will furnish him with a reasonably safe place in which to work and will not imperil his safety, and hence a car repairer who was at work under a car had the right to assume that his employer would not cause the car to be moved without first notifying him.

11. **REMOVAL OF CAUSES: Diversity of Citizenship: Taking Non-suit as to Resident Defendant.** In an action against a foreign corporation and two individual defendants, residents of this State, where plaintiff took an involuntary nonsuit as to the two individual defendants, *held* that the court did not err in overruling a petition for the removal of the cause to the United States District Court, filed by the foreign corporation defendant; following Kansas City Suburban Belt Ry. Co. v. Herman, 187 U. S. 63.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

AFFIRMED.

*Watts, Gentry & Lee* for appellant.

(1) The court erred in overruling the defendant's demurrer to the evidence. The same rule is applicable in this case as that which has been applied in suits by section hands, in suits for personal injuries, and in suits by widows of section hands for damages occa-

sioned by their death by the operation of trains by railroad companies. Cahill v. Railroad, 205 Mo. 393; Brockschmidt v. Railroad, 205 Mo. 435; McGrath v. Transit Co., 197 Mo. 97; Sissell v. Railroad, 214 Mo. 515; Clancy v. Transit Co., 192 Mo. 615; Evans v. Railroad, 178 Mo. 508; Davies v. People's Railway Co., 159 Mo. 1; Degonia v. Railroad, 224 Mo. 564; Van Dyke v. Railrod, 230 Mo. 259; Ginocchio v. Railroad, 155 Mo. App. 163; Hitz v. Railroad, 152 Mo. App. 687. (2)   The court erred in denying the application of the defendant, American Car & Foundry Company, for removal of this case to the United States Court after the plaintiff had taken a non-suit as to the two individual defendants who were originally joined.   Powers v. Railroad, 169 U. S. 192.   (3)   The court erred in permitting the plaintiff to testify over the objection of defendant's counsel that she had no means of support except her husband.   This was very prejudicial to the defendant, especially where it was a non-resident corporation, since it paraded the poverty of the widow before the jury.   There was nothing in the case to justify punitive damages.   If there had been, then such evidence would have been admissible, but this action is based purely on negligence.   Therefore evidence of the financial condition of either plaintiff or defendant was inadmissible.   Overholt v. Vieths, 93 Mo. 422; Stephens v. Railroad, 96 Mo. 207; Weller v. Railroad, 120 Mo. 635; Railroad v. Roy, 102 U. S. 45; Chicago v. O'Brennan, 65 Ill. 160; Railroad v. Powers, 74 Ill. 341; Railroad v. Moore, 61 Ga. 151; Railroad v. Morandow, 93 Ill. 302; Railroad v. Johnson, 103 Ill. 512; Railroad v. Pitzer, 109 Ind. 179; Green v. Railroad, 122 Cal. 563; Railroad v. Evans' Administrator, 23 Ky. L. Rep. 568; Brennan v. Coal Co., 241 Ill. 610; Gas Co. v. State, 109 Md. 186.

*George Safford* for respondent.

(1) The rule applicable to section hands working on railroad tracks where trains are expected to be running to and fro at all times does not apply to car repairers working about and upon cars on repair tracks in car shops when the employer by custom impliedly contracts to notify the repairers when cars are to be moved, in time to permit them to reach a place of safety, and to refrain from moving such cars until such timely notice is given. Anderson v. Railroad, 196 Mo. 448; Porter v. Stockyards Co., 213 Mo. 372; Koerner v. Car Co., 209 Mo. 141. (2) Every fact which the evidence tends to prove, though but in the slightest degree, must be taken as admitted by an instruction in the nature of a demurrer to the evidence, and every inference which the evidence tends to show in plaintiff's favor should be drawn. Wilkerson v. Railroad, 26 Mo. App. 144; Field v. Railroad, 46 Mo. App. 449; Bender v. Railroad, 137 Mo. 240; Moore v. Railroad, 73 Mo. 439; Vautrain v. Railroad, 78 Mo. 45. (2) The court did not err in denying appellant's petition for removal. (a) We deny that a petition for removal lies when a controversy, for the first time, becomes one wholly between citizens of different states on account of an involuntary termination of the controversy, after the trial has begun in good faith, as to the local defendant. Lathrop, Shea & Henwood Co. v. Int. C. & I. Co., 215 U. S. 247; Alabama G. S. R. Co. v. Thompson, 200 U. S. 206; Railroad v. Herman, 187 U. S. 63; Knott v. McGilvray, 124 Cal. 128; McGilvray v. Knott, 179 U. S. 680; McDonnell v. Jordan, 178 U. S. 229; Gerling v. Railroad, 151 U. S. 686; Fisk v. Henarie, 142 U. S. 469; Rosenthal v. Coates, 148 U. S. 142; Laidly v. Huntington, 121 U. S. 179; Bank v. Claypool, 120 U. S. 268; Gregory v. Hartley, 113 U. S. 742; Scharff v. Levy, 112 U. S. 711; Alley v. Nott, 111 U. S. 472; Moon on

Removal of Causes, art. 187; Moon on Removal of Causes, art. 7; Howe v. Railroad, 30 Wash. 575. (b) But an involuntary nonsuit with leave to move to set same aside and reinstate does not terminate the controversy. State to use Resp. v. Kessler, 15 Mo. App. 590. (c) Nonsuit after demurrer to the evidence has been sustained and timely exceptions saved, is involuntary. Nivert v. Railroad, 232 Mo. 811; Shoe Co. v. Prickett, 84 Mo. 94; Lewis v. Mining Co., 199 Mo. 463; Dunnevant v. Mocksond, 122 Mo. App. 428. (3) The court did not err in admitting evidence as to the pecuniary standing of plaintiff. (a) Such evidence is admissible to show that plaintiff was dependent on her deceased husband for support and the amount he did contribute and would have contributed to her and her children's support. Railroad v. Moseley, 51 So. 424; Railroad v. Jones, 130 Ala. 456; Swift & Co. v. Foster, 163 Ill. 50; Mulhall v. Fallon, 176 Mass. 266; Electric Light Co. v. Sullivan, 22 App. D. C. 115; Fowler v. Furnace Co., 58 N. Y. S. 223, 41 App. Div. 44; Railroad v. Altemeier, 60 Ohio St. 10; Railroad v. Burnett, 38 S. W. 813; Railroad v. White, 56 S. W. 204; Railroad v. Knight, 52 S. W. 640; Railroad v. Davis, 54 S. W. 909; Thoresen v. Railroad, 94 Wis. 129; Cooper v. Railroad, 66 Mich. 261; Railroad v. Crudup, 63 Miss. 291; Pressman v. Mooney, 5 App. Div. 121; Sills v. Railroad, 28 S. W. 908; Ewin v. Railroad, 38 Wis. 613; Johnson v. Railroad, 64 Wis. 425; Annas v. Railroad, 67 Wis. 46. (b) An objection that testimony is "immaterial" is so general that it amounts to no objection at all, and does not constitute proper foundation for the assignment of error in this court. State v. Hailsabeck, 132 Mo. 359; State v. Howard, 203 Mo. 600; State v. Meagher, 124 Mo. App. 333; State v. Crone, 209 Mo. 316; Randell v. Railroad, 102 Mo. App. 342; Lumber Co. v. Rogers, 145 Mo. 445; Gayle v. Car & Foundry Co., 177 Mo. 427.

REYNOLDS, P. J.—The appeal in this case, from a judgment against the American Car & Foundry Company, was originally taken by that company to the Supreme Court of the State. The verdict and judgment were for $5400. On consideration of the cause the Supreme Court, adopting an opinion by Mr. Commissioner Brown, transfered the cause to our court, the opinion reported under the title Kettelhake v. American Car & Foundry Company, 243 Mo. 412, 147 S. W. 479.

The action was originally instituted February 5, 1908, by plaintiff, widow of one Frank Kettlehake, against the defendant American Car & Foundry Company and two others for the recovery of damages alleged to have been sustained by reason of the death of her husband. As pleaded in the amended petition, the right of action set out in the first count of the petition purported to be based upon section 2864, Revised Statutes 1899, as amended by the Act approved April 13, 1905 (Session Acts 1905, p. 135), now section 5425, Revised Statutes 1909, $10,000 being claimed as damages under the provisions of that act. The second count was founded on section 2866, Revised Statutes 1899, as amended by the Act approved March 19, 1907 (Session Acts 1907, p. 252), now section 5426, Revised Statutes 1909. Ten thousand dollars was likewise claimed under this act. Before the case was finally submitted to the jury, plaintiff dismissed as to the second count, so that is out of this case. Recovery was had on the first count and against the appellant American Car & Foundry Company alone, the plaintiff having taken an involuntary nonsuit as to the two individual defendants. It is in connection with this latter phase of the case that a federal question was sought to be injected into the case. We refer to the opinion of Mr. Commissioner Brown, before cited, for a full statement of the facts connected with this.

The errors here assigned by counsel for the ap-

pellant are four, namely, to the overruling of the demurrer to the evidence, to the admission of improper evidence tending to show plaintiff's poverty, to the giving of improper instructions and to the denial of the application of the American Car & Foundry Company's application for removal of the cause to the United States Circuit, now District, Court.

It goes without saying that the demurrer to the evidence is to be determined on that of plaintiff, respondent here. A very careful reading and consideration of that satisfies us that it was sufficient to take the case to the jury. Plaintiff's husband was a car repairer in the employ of defendant, a corporation created and organized under and by virtue of the laws of the State of New Jersey, engaged in the manufacture and repair of cars in the city of St. Louis. It there had extensive shops and yards, moving cars in and about its yards by locomotive engines owned and operated by it, there being a network of tracks in its yards along which it moved and on which it placed cars in course of construction or repair. Immediately before the accident Kettlehake and a fellow employee named Lechner were engaged in what Lechner calls "working bottoms; that is, fastening nuts on the bottoms of these box cars." He further testified that to do this they worked under a car, which had been placed on one of the tracks in the yards of the defendant corporation. He and Kettelhake had been at that work all of the day of the accident, which occurred between four and five o'clock on January 23d. A few minutes after four o'clock on that afternoon having occasion to quit his work temporarily and go to a toilet room, he left Kettlehake at work under the rear car of three cars that were in place. As he was walking away from this car, he saw a switchman or brakeman coming toward him but on the south side of the cars at which witness had been working, witness then being on the north side. When he first saw this

switchman or brakeman, the latter stopped, facing the engine and train of seven cars that were being backed down along track No. 12, upon which the three cars, under one of which they had been working, were standing. This man "just waved his hand." The cars were then coming down toward the three stationary cars. Witness said that when he saw this man signalling toward the on-coming train, he could see around the three standing cars and there was nobody back there. As the man signalled with his hand the train backed toward these cars under which he and Kettelhake were working. They came down "about as fast as a man could walk." After the man had signalled to the on-coming train, it passed between him and witness. He then heard the bump of the on-coming cars as they struck the foremost of the three cars in place and that was all that he heard in the way of noise. He further testified that this was a few seconds after he had got from under the car where he had been working along with Kettelhake and under which he had left Kettelhake at work, and that no one had walked along past these three cars and no one had hallooed or called out to him or his partner at work there. Witness was standing very near to these cars in place when he saw this man signalling. He described and located it on photographs in evidence, marked it out there and stated that he should judge that it was between ninety and a hundred feet from where he was to where these cars were. While he was at this point there was nobody in sight except this switchman or brakeman. Witness looked back and could see all the way on the south side of the car; there was nobody on the south side or on the north side of the cars. When the cars bumped, witness was between a hundred and a hundred and thirty feet from them, walking pretty fast. He remained away about ten minutes in all and went right back to where he and Kettelhake had been working; met a young man running in that direction who

told him to take hold of a ladder. They constructed a stretcher out of that, went to where Kettelhake was and found him lying near the center of the car about a foot or a foot and a half from it; was lying there moaning and holding his leg; his pants were torn and bloody, torn at the knee. It was not to exceed eight or ten minutes from the time he had left Kettlehake at work until he got back and saw him lying at the side of the car. When he saw this switchman the latter was standing between these three cars and the on-coming train, apparently at or near a curve in the track and this switchman went back along the curve to where he could see his own train and gave a signal, giving it with his hands. As soon as the signal was given the engine and the seven cars came along and witness heard the crash of the impact and that, he insisted, was the only noise he heard; heard no one call out before he left or while he was at work a few seconds before under the car with Kettlehake. His hearing was good; was sure he would have heard anyone that had called out to them to look out. When going toward the toilet met a couple of men who had been engaged at the same kind of work on the other end of the same car upon which he and Kettelhake had been working and spoke to them; looked at his watch, on their request, and told them it was five minutes past four.

Another witness, who was looking out of the window of a house near the yards of the defendant corporation, testified that he saw a man standing up working upon or near, within an arm's length, of the corner of a new freight car, one of three cars that had been standing on a track in the yards of the defendant corporation's plant for several days. He saw an engine and several cars moving along the track toward these three standing cars and move them some distance, so that the car he saw the man working on struck that man and left him lying upon the ground,

hallooing and waving his arms. Witness ran about two hundred feet and met one Caporal, also working for the defendant corporation, as was the witness, and told him a man was hurt ''in the car shops,'' to go and see about it. Caporal started right off and, as he testified, told the people in the office that a man had been killed ''in the yards.'' Going with others of the employees to search for the man they found him lying by the third car of the three that were in place on track twelve. He was lying down about three feet from the rail of this track. That was about six or seven minutes after witness had been told of the accident. When he got there there was no engine about. This witness and the preceding one were unable to speak English, the first one referred to, who said he saw Kettelhake run over, giving his deposition through an interpreter.

Another witness, who with his partner had been working on the same car with Kettelhake and Lechner, testified he had quit work while Kettelhake and Lechner were still at work—saw them working under the bottom of the car and spoke to them; shortly afterwards met Lechner as the latter was hurrying to the outhouse—toilet room, and spoke to him. About fifteen minutes afterwards heard of the accident to Kettelhake; did not go back to see him; just heard he was killed.

While the witnesses for plaintiff testified that it was the custom of the employees of defendant corporation, in charge of its trains, to give warning of an approaching train, and while the witness Lechner, as we have above stated, testified most positively that no one had warned them on this occasion, either by walking along the cars under which he and Kettelhake were working, or by calling out, it is due appellant to say that a wittness for appellant testified that he was the switchman and of the crew of the backing train on this occasion and that he had walked the whole

length of the three cars, looked under them and called out, for the benefit of anyone at work there, "look out." He rather weakened this by saying, on cross-examination, that he was sure he had done so on this occasion because that was his custom. It was in evidence that the crew of that train did not know they had run over or hurt anyone until a couple of hours afterwards. Plaintiff's husband died the day following the accident. It was in evidence that he had been sent to this place to do this work by a person representing the defendant corporation, having authority to do so; that he had worked for the defendant corporation some time and that he was in the discharge of his usual duties in repairing cars when the accident happened.

Under this state of facts we think that plaintiff made out a case for the consideration of the jury and that the demurrer to the evidence was properly overruled. It is further to be said that with the evidence introduced by appellant before them, contradicting that of plaintiff as to warning having been given, the jury alone, guided by proper instructions, are the ones to pass upon which version is correct; their verdict on that issue concludes this court.

The evidence complained of as improperly admitted was that of plaintiff herself. She testified that she had lived with her deceased husband for nineteen years and up to the date of his death; that he had worked for her all their married life and had supported her. The court asked her if she had any other means of support, excepting him. To this counsel for defendant, appellant, objected "as immaterial." The objection was overruled and defendant excepted. The witness then answered that she had not, that he was supporting her and the family. She afterwards, and without further objection, testified that her husband had worked for her and given her all of his earnings, testifying as to what they amounted to, and his age,

and to the number of children they had and their ages, all minors; that her husband was in good health up to the time of his death; had worked for the defendant corporation for nearly three years; testified that he understood and spoke English; that his hearing and eyesight were good and that during all of their married life they had lived in this State.

The only objection interposed was to the questions by the court which we have set out, and that objection was that it was "immaterial."

We might dispose of this by saying that our Supreme Court has held in many cases that such objection is insufficient and does not constitute proper foundation for the assignment of error, being too general. As see Gayle v. Missouri Car & Foundry Co., 177 Mo. 427, l. c. 454, 76 S. W. 987. That is the rule even in criminal cases. State v. Crone, 209 Mo. 316, l. c. 330, 108 S. W. 555.

We are not overlooking the rule that when objection has been once made and acted upon and the ruling saved, it is unnecessary to repeat that objection to the same line of testimony. [See Gold v. Pian Time Payment Jewelry Co., 165 Mo. App. 154, l. c. 163, 145 S. W. 1174.] But the objection must be a proper one—made with certainty. We place our ruling as to this evidence on the further ground that it has been distinctly held by our Supreme Court in Boyd v. Missouri Pac. Ry. Co., 236 Mo. 54, 139 S. W. 561, that in actions under this section of the statute, the widow who seeks damages for the death of her husband may give in evidence the number and ages of minor children as bearing on her pecuniary loss. So we held in Hartnett v. United Railways Co., 162 Mo. App. 554, 142 S. W. 750. It is held in the Boyd case that this section, while providing for a minimum and a maximum amount at the discretion of the jury, has a remedial side and as looking to that, the jury may consider the extent of the injury, and that as it also has a penal side, the

jury has a right to consider the facts of the defendant's negligence; in brief, that it is both penal and compensatory. We see no error in the admission of this testimony to which objection was made. Surely if competent to show the burdens cast upon the widow by the death of her husband by reason of her having children dependent upon her, it is competent, as tending to show what she had lost in the death of her husband, to prove that she had been left penniless and thrown on her own resources to support herself and the minor children.

In this view of the case we see no error in giving the instruction of which special complaint is made. That told the jury that if they found for plaintiff they should award her not less than $2000 nor more than $10,000, "as you may deem fair and just under the evidence in this case with reference to the necessary injury resulting to her from the death of her husband; and in determining what such injury is, you should consider all the evidence before you, bearing upon that subject." As section 5425 is interpreted by our Supreme Court in Boyd v. Missouri Pac. Ry. Co., supra, we hold this instruction proper.

The only objection made to the other instructions, particularly the main instruction given by the court of its own motion, is the very general one that in setting forth the facts on which the plaintiff was entitled to recover, it "is subject to the criticism that even if the facts therein stated were admitted to be true, no right of recovery arose therefrom because of the rule invoked" by counsel in contending that the demurrer to the evidence should have been sustained. The gist of this contention of counsel is that the husband of plaintiff had assumed this risk, which resulted in his death. Degonia v. St. Louis, I. M. & S. R. Co., 224 Mo. 564, 123 S. W. 807; Van Dyke v. Missouri Pac. Ry. Co., 230 Mo. 259, 130 S. W. 1; McGrath v. St.

Louis Transit Co., 197 Mo. 97, 94 S. W. 872, and the like are relied upon in support of this contention.

Our court in Peppers v. St. Louis Plate Glass Co., 165 Mo. App. 556, 148 S. W. 401, determined that the rule announced in the McGrath case, while applicable to section hands engaged in their work, did not apply to a case such as this. The writer of this dissented from the majority of his associates in that case; but it must now be accepted as the decision of the court. The case at bar is governed, as to this aspect of it, by the decision of our Supreme Court in Koerner v. St. Louis Car Co., 209 Mo. 141, 107 S. W. 481. The facts in that are quite similar to those in the one at bar. There it is held that where the defendant corporation, through one of its managing superintendents, had sent an employee to work on an unfinished car on one of its tracks, it was its duty to provide against other cars running down against the car upon which he was working and to see that other cars which were pulled out were not attached to the car upon which he was working, without giving him warning of the intention to move that car. It is also there held that while the employee, in entering the service of the employer, assumes the risks that ordinarily and usually are incident to the business being conducted by the employer, the employee does not assume the risk arising from the emlpoyer's neglect to adopt suitable precautions for his safety. That duty is a continuing one and it will not suffice to say that when the employee went to work at that place it was reasonably safe. If the place was afterwards rendered unsafe by the negligent act of the employer in sending a switching crew in there who negligently moved the car upon which the employee was working, without giving him warning of their intention to move it, then the employer is liable for the consequences of this negligent act of the crew in charge of the moving train. The employee had a right to presume, in the absence of knowledge to the

contrary, that the defendant would furnish him a reasonably safe place to work; that the employer would not imperil his safety by sending its other employees in to move the car upon which he was working without notifying him. In the case at bar the jury were instructed very accurately along these lines. There was contradiction and conflict in the evidence as to whether a warning had been given, but there was positive, affirmative evidence that none had been given to plaintiff's husband while he was at work in this dangerous position, and it was for the jury to determine, as already remarked, which version it would accept. There is no reversible error, therefore, presented in this case so far as concerns the evidence or the instructions.

The only remaining proposition in it is as to the refusal by the court to sustain the petition of defendant corporation for removal of the cause to the United States District Court. The facts connected with that are set out with sufficient particularity by Mr. Commissioner BROWN in this case when before the Supreme Court, and we refer to his opinion, before cited, without repeating them here. We are unable to understand in the light of the facts here how it could be said that by taking an involuntary nonsuit as to the two individual defendants, they had so completely disappeared from the case as to leave the controversy one entirely between plaintiff and the corporation defendant. We think that Kansas City Suburban Belt Ry. Co. v. Herman, 187 U. S. 63, settles this. There the Supreme Court distinguishes that case from Powers v. Chesapeake & Ohio Ry. Co., 169 U. S. 92, relied upon by counsel for appellant.

Finding no reversible error, the judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.*, concur.